WAL-MART STORES, INC.  *v.*  Thomas M. COUGHLIN

06–315                                                     255 S.W.3d 424

Supreme Court of Arkansas
Opinion delivered April 12, 2007

*Gibson, Dunn & Crutcher, LLP,* by: *Theodore J. Boutrous, Jr., Eugene Scalia,* and *Julia W. Poon; Warner, Smith & Harris, PLLC,* by: *P. K. Holmes, III,* and *Matthew C. Carter; Gettman & Mills LLP,* by: *Michael J. Mills,* for appellant.

*Barrett & Deacon, A Professional Association,* by: *D. P. Marshall Jr.* and *Brandon J. Harrison; Taylor Law Firm,* by: *W. H. Taylor* and *Steven E. Vowell; Zuckerman Spaeder LLP,* by: *William W. Taylor, III, Blair G. Brown* and *Caroline Judge Mehta,* for appellee.

ROBERT L. BROWN, Justice. Appellant, Wal–Mart Stores, Inc., appeals from an order dismissing its First Amended Complaint filed against appellee, Thomas Coughlin. Wal–Mart raises issues on appeal relating to (1) Coughlin's duty as a fiduciary to disclose material facts before entering into a self-dealing contract, and (2) his fraudulent inducement of Wal–Mart to enter into the Retirement Agreement, which incorporated a Mutual General Release (Release) between the parties, by his failure to disclose material facts and by his affirmative misrepresentations. We agree with Wal–Mart that it sufficiently pled Coughlin's duty, as a fiduciary, to disclose material facts as well as fraudulent inducement by Coughlin's affirma-

tive misrepresentations so as to withstand a motion to dismiss under Rule 12(b)(6) of the Arkansas Rules of Civil Procedure. We further agree that the circuit court made a premature finding of fact in its order of dismissal relating to Coughlin's fraudulent purpose in connection with the Retirement Agreement and Release. We reverse and remand for further proceedings.

The facts are taken from Wal-Mart's First Amended Complaint. In 1978, Coughlin began working for Wal-Mart as the Director for Loss Prevention, where he had the responsibility to investigate theft, fraud, and abuse by Wal-Mart associates, suppliers, and others who may have committed these offenses against the company. From 1983 until 2003, Coughlin held various executive positions within Wal-Mart and the company's Sam's Club division. He also eventually became a member of the Wal-Mart Board of Directors. During this time, he retained responsibility for management of the Loss Prevention Department. In 2003, Coughlin assumed the position of Executive Vice President and Vice Chairman of the Board of Wal-Mart Stores, Inc. (USA), and later became Vice Chairman of Wal-Mart's Board of Directors.

In 2004, Wal-Mart announced that Coughlin would retire in 2005. On January 22, 2005, Wal-Mart and Coughlin entered into a Retirement Agreement, which included the Release between the parties, under which Coughlin was to receive millions of dollars in benefits over the ensuing years. In February 2005, after the execution of the agreement, Wal-Mart learned of Coughlin's fraudulent conduct after a store associate alerted Wal-Mart's internal investigations group that Coughlin had used a Wal-Mart gift card, issued internally for associate relations, for personal purchases. Through the internal investigation that followed, Wal-Mart learned that Coughlin had abused his position of authority and conspired with subordinates to misappropriate hundreds of thousands of dollars in cash and property through various fraudulent schemes. Three months after Wal-Mart signed the Retirement Agreement and Release with Coughlin, Wal-Mart suspended Coughlin's retirement benefits.

On July 27, 2005, Wal-Mart filed suit against Coughlin to void the Retirement Agreement and Release and alleged ten claims for relief: fraud, fraudulent concealment, breach of fiduciary duty, conversion, accounting, restitution based on rescission of the Retirement Agreement, declaratory judgment that Coughlin is not entitled to retirement benefits under the Retirement Agreement, restitution based on unjust enrichment, judgment for

money had and received by Coughlin, and conspiracy. Coughlin moved to dismiss the complaint for failure to state a claim upon which relief could be granted under Rule 12(b)(6) of the Arkansas Rules of Civil Procedure. On November 1, 2005, the circuit court dismissed Wal-Mart's complaint with respect to all allegations occurring prior to the execution of the Retirement Agreement and Release. The circuit court ruled in its order that Wal-Mart had failed to plead specifically that it was fraudulently induced to sign the Retirement Agreement and Release. The court further stated that whether Coughlin had a duty to disclose material facts to Wal-Mart before signing the Retirement Agreement and Release was an issue of first impression in Arkansas and that it would not reach such a conclusion, particularly in light of the Release. In its order, the circuit court said: "the Arkansas trial court is the wrong venue in which to make new case law."

On November 4, 2005, Wal-Mart filed its First Amended Complaint and added fraudulent inducement of the Retirement Agreement and Release as a new claim for relief. Wal-Mart alleged in that new claim that Coughlin had made repeated misrepresentations to Wal-Mart about his conduct by his execution of Certifications and Disclosures pursuant to SEC regulations and Wal-Mart's internal policies, which attested to no wrongdoing. Walmart asserted that these misrepresentations induced it to enter into the Retirement Agreement and Release. On January 23, 2006, the circuit court entered its final order, which found that "Wal-Mart failed to specifically plead a nex[u]s between Coughlin's alleged fraud and the signing of the Release" and dismissed the First Amended Complaint.

## I. Fiduciary's Duty to Disclose

Wal-Mart concedes that the issue of a fiduciary's duty to disclose improper conduct to the corporation has never been decided in Arkansas. It urges, nonetheless, that this court should bring Arkansas in line with the view held by the vast majority of other state and federal courts. It asserts that this court has long held that corporate officers and directors owe a fiduciary duty to their corporations, but it contends that we now should take the additional step and hold that this duty obligates officers and directors to disclose material facts of past fraud to the corporation before entering into a self-dealing contract. This fiduciary duty, according to Wal-Mart, applies to directors and officers when entering into agreements with the corporation, and it is those directors and

officers who have the burden of proving good faith and fairness with respect to the agreement with the corporation. Wal-Mart maintains that Coughlin breached his fiduciary duty of disclosure by concealing his prior theft from Wal-Mart when negotiating and signing his Retirement Agreement and Release.

Coughlin, for his part, does not dispute that he breached his fiduciary duty by stealing from Wal-Mart but rather insists that the Release in the Retirement Agreement bars any "known or un-known" claim Wal-Mart has against him. He contends that Arkansas case law does not support Wal-Mart's position that fiduciaries have a duty to disclose past fraud to corporations before entering into an agreement with those corporations. Rather, he argues that this state strongly supports freedom of contract be-tween two sophisticated parties and that the general principles of contract law must apply to this case. He contends that Wal-Mart, which insisted that he sign the Release as part of the Retirement Agreement, was capable of excluding claims arising from a breach of the fiduciary's duty to disclose but chose not to do so. He further contends, and the circuit court agreed, that Wal-Mart's position regarding a fiduciary's duty to disclose renders the Release clause moot. Thus, he concludes, Wal-Mart should now be bound by the clear terms of the Release.

This court has stated its standard of review for Rule 12(b)(6) dismissals to be as follows:

> We review a trial court's decision on a motion to dismiss by treating the facts alleged in the complaint as true and by viewing them in the light most favorable to the plaintiff. In viewing the facts in the light most favorable to the plaintiff, the facts should be liberally construed in plaintiff's favor. Our rules require fact pleading, and a complaint must state facts, not mere conclusions, in order to entitle the pleader to relief.

*Biedenharn v. Thicksten,* 361 Ark. 438, 441, 206 S.W.3d 837, 840 (2005) (internal citations omitted).

With those principles in mind, we turn to the merits of this issue. Arkansas jurisprudence "imposes a high standard of conduct upon an officer or director of a corporation." *Raines v. Toney,* 228 Ark. 1170, 1178, 313 S.W.2d 802, 808 (1958). This court has held that an officer or director of a corporation owes a fiduciary duty to the corporation and its shareholders. *See Raines, supra.* The high standard of conduct owed by an officer to his corporation has also been codified in the Arkansas Business Corporation Act:

(a) An officer with discretionary authority shall discharge his duties under that authority:

(1) in good faith;

(2) with the care an ordinarily prudent person in a like position would exercise under similar circumstances; and

(3) in a manner he reasonably believes to be in the best interests of the corporation.

Ark. Code Ann. § 4-27-842(a) (Repl. 2001); *see also* Ark. Code Ann. § 4-27-830(a) (Repl. 2001) (establishing an identical standard of conduct for directors).

This court imposes an even greater duty on a person who serves as both an officer and a director of a corporation. *See Raines, supra.* We have said that one who owes a fiduciary duty to a corporation may be subject to liability to the corporation for any harm resulting from a breach of his or her fiduciary duty. *See Long v. Lampton,* 324 Ark. 511, 922 S.W.2d 692 (1996). We have further said that "a director is a 'fiduciary' as to any agreements between the corporation and himself *individually.*" *Hall v. Straha,* 303 Ark. 673, 681, 800 S.W.2d 396, 401 (1990) (*Hall I*). The burden of proving that the transaction between the director and the corporation is made in good faith and is fair to the corporation lies with the director. *See id.* Finally, this court has said that "[i]n the search for inherent fairness and good faith to a corporation and shareholders, conduct of directors must be subjected to 'rigorous scrutiny' when conflicting self-interest is shown." *Hall v. Straha,* 314 Ark. 71, 79, 858 S.W.2d 672, 676 (1993) (*Hall II*) (citing *Pepper v. Litton,* 308 U.S. 295 (1939).

The Release included in the Retirement Agreement provides:

The Associate and Wal-Mart hereby release, acquit and forever discharge each other and (to the extent applicable) their respective directors, officers, shareholders, employees, successors and assigns, of and from any and all liability for claims, causes of actions, demands, damages, attorneys fees, expenses, compensation, or other costs or losses of any nature whatsoever, whether known or unknown, which the Associate or Wal-Mart may have arising out of or in any way related to the Associate's employment with

Wal-Mart, including, but not limited to, claims for wages, back pay, front pay, promotion or reinstatement opportunities. This release does not, however, preclude the Associate or Wal-Mart from pursuing a claim for breach of the Agreement or the Non-Compete Agreement.

Both parties are correct that the Release in this case is a type of contract between the parties and is interpreted pursuant to the rules of contract interpretation. *See Green v. Owens*, 254 Ark. 574, 495 S.W.2d 166 (1973). Our standard of review for contract interpretation has been stated often:

> The first rule of interpretation of a contract is to give to the language employed the meaning that the parties intended. In construing any contract, we must consider the sense and meaning of the words used by the parties as they are taken and understood in their plain and ordinary meaning. The best construction is that which is made by viewing the subject of the contract, as the mass of mankind would view it, as it may be safely assumed that such was the aspect in which the parties themselves viewed it. It is also a well-settled rule in construing a contract that the intention of the parties is to be gathered, not from particular words and phrases, but from the whole context of the agreement.

*Alexander v. McEwen*, 367 Ark. 241, 244, 239 S.W.3d 519, 522 (2006) (internal citations omitted).

We address then the question of a fiduciary's failure to disclose fraud perpetrated against the corporation and the impact it has on the validity of a subsequent Retirement Agreement and Release. As an initial matter, we conclude that the language of the Release is clear and unambiguous. Despite that clear language, a significant majority of other jurisdictions, both state and federal, have held that a fiduciary owes a duty of full disclosure when entering into a transaction with the fiduciary's corporation and that the fiduciary's failure to disclose material facts relating to a mutual release of claims between the parties is sufficient to set aside the release. *See, e.g., In re Mi-Lor Corp.*, 348 F.3d 294, 303 (1st Cir. 2003) (fiduciaries owe a duty of full disclosure of material facts in connection with a self-dealing transaction, and "in the case of a self-dealing release, information about the conduct of the potential recipients of the release is necessary for deciding whether to grant the release."); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1481 (6th Cir. 1989) (holding that federal law applies to the validity of

releases and that federal law at a minimum requires the standards of the Restatement of Contracts 2d § 173, which states "[i]f a fiduciary makes a contract with his beneficiary relating to matters within the scope of the fiduciary relation, the contract is voidable by the beneficiary unless . . . all parties beneficially interested manifest assent with full understanding of their legal rights and of all relevant facts that the fiduciary knows or should know"); *Shane v. Shane*, 891 F.2d 976, 986 (1st Cir. 1989) (a release will not bar subsequent claims if the release was obtained by fraud or misrepresentation, and "where a release is obtained without full disclosure of the relevant facts by one who is under a duty to reveal them, it can be set aside"); *Cwikla v. Sheir*, 801 N.E.2d 1103, 1112 (Ill. App. 2003) ("Parties in a fiduciary relationship owe one another a duty of full disclosure of material facts when . . . obtaining a release . . . . [A] severance agreement arising out of a fiduciary relationship is voidable if one party withheld facts that were material to the agreement . . . . A withheld fact is material if plaintiff would have acted differently had he been aware of the withheld fact."); *Blue Chip Emerald, LLC v. Allied Partners, Inc.*, 750 N.Y.S.2d 291 (N.Y. App. Div. 2002) (a release is voidable if a fiduciary, in furtherance of his individual interests, fails to make full disclosure of all material facts that could reasonably bear on the corporation's decision to grant the release); *Old Harbor Native Corp. v. Afognak Joint Venture*, 30 P.3d 101, 105 (Ala. 2001) (a release is "susceptible to attack under the legal theories of mistake, fraud, and misrepresentation" and a release may be ineffective if a fiduciary breaches his affirmative duty of full disclosure of material facts); *Soderquist v. Kramer*, 595 So.2d 825, 830 (La. App. 1992) (stating that "[t]he duty imposed on a fiduciary embraces the obligation to render a full and fair disclosure to the beneficiary of all facts which materially affect his rights and interest" and a material question of fact existed as to whether an attorney disclosed to his client the extent of a conflict of interest when obtaining a release as the release would not bar a claim for legal malpractice if full disclosure was not made); *Pacelli Bros. Transp., Inc. v. Pacelli*, 456 A.2d 325, 329 (Conn. 1983) (a "general release cannot shield an officer or director who has failed in his fiduciary duty to disclose information relevant to a transaction with those whose confidence he has abused"); *State ex rel. Hayes Oyster Co. v. Keypoint Oyster Co.*, 391 P.2d 979, 986 (Wash. 1964) (corporation's release of former president was not binding because the president had failed to make full disclosure of material facts, and "[a] corporation cannot ratify the breach of fiduciary duties unless full and complete disclosure of

all facts and circumstances is made by the fiduciary and an intentional relinquishment by the corporation of its rights"); *Norris v. Cohen*, 27 N.W.2d 277, 281 (Minn. 1947) ("[A] general release does not extend to claims of which one party thereto was wrongfully kept in ignorance by the other" and "the wrongful concealment of facts by one party to a release affords sufficient ground to the other for setting it aside, particularly where the information concealed is not equally within the knowledge of both parties.").[1]

The authority adduced by Coughlin, while supportive of his position in certain respects, is distinguishable on the facts. *See Fitzwater v. Lambert & Barr, Inc.*, 539 F.Supp. 282 (W.D. Ark. 1982) (a duty owed by a fiduciary not involved); *K3 Equipment Corp. v. Kintner*, 233 A.D.2d 556 (N.Y. App. Div. 1996) (some facts suggested that plaintiff corporation should have been aware of fraud by the fiduciary at time release executed); *Tolton v. Mac Tools, Inc.*, 453 S.E.2d 563 (N.C. App. 1995) (fiduciary duty not involved, and no fraud alleged in procurement of release); *Ristau v. Wescold, Inc*, 868 P.2d 1331 (Or. 1994) (plaintiff conceded that release was not fraudulently induced).

We hold, first, that Wal-Mart sufficiently stated a claim for relief in its First Amended Complaint that Coughlin had a duty as a fiduciary to disclose material facts, including fraud and misappropriation of goods. We further hold that Wal-Mart has sufficiently stated a claim that it would not have entered the Retirement Agreement and Release had it known of Coughlin's misconduct.

We are persuaded, in addition, that the majority view is correct, which is that the failure of a fiduciary to disclose material facts of his fraudulent conduct to his corporation prior to entering into a self-dealing contract with that corporation will void that contract and that material facts are those facts that could cause a party to act differently had the party known of those facts. We emphasize, however, that this duty of a fiduciary to disclose is embraced within the obligation of a fiduciary to act towards his

---

[1] Both parties cite, and the circuit court, in its initial order, relies upon *E.I. DuPont De Nemours and Company v. Florida Evergreen Foliage*, 744 A.2d 457 (Del. 1999). In that case, the Supreme Court of Delaware held that a release incorporated into a settlement agreement between a plaintiff and defendant in litigation did not bar the plaintiff's claim for fraud in the inducement of the settlement agreement and release. That case, however, did not involve a fiduciary relationship between the parties.

corporation in good faith, which has long been the law in Arkansas. Stated differently, we are not adopting a new principle of fiduciary law by our holding today but simply giving voice to an obvious element of the fiduciary's duty of good faith. We reverse the order of dismissal on this point and remand the matter for further proceedings.[2]

■ In holding as we do, we have considered Coughlin's arguments that Wal–Mart, which drafted the Release, could have used more precise language in its Release regarding a fiduciary's duty and that, in any event, the Release should be upheld, as a matter of law, and construed against Wal–Mart as the drafter. On the latter point, however, we have already held in this opinion that the language of the Release is clear and unambiguous. We, furthermore, have considered Coughlin's contention that Arkansas has strong jurisprudence favoring freedom of contract. Nevertheless, we conclude that it is for a jury to decide whether Coughlin breached his fiduciary duty to disclose material facts to Wal–Mart and whether the parties intended the Release to bar claims of fraudulent inducement related to that duty to disclose.

## II. Fraudulent Inducement

The next issue raised by Wal–Mart is a variation of the same theme. Wal–Mart contends that the circuit court erred in giving effect to the terms of the Release before resolving the question of whether Coughlin, by his failure to disclose material facts and his affirmative misrepresentations, fraudulently induced Wal–Mart into signing the contract. Wal–Mart claims that circuit courts should not give effect to the terms of a contract if there is a factual or legal question regarding the contract's validity. It urges that a contract, which is the product of fraudulent inducement, is void and that the terms of a release in that contract cannot bar a claim by one of the parties who was fraudulently induced into executing the contract. Wal–Mart reiterates, as a further proposition, that the question of whether fraud induced the execution of the Retirement Agreement and Release is a fact question for a jury to decide and that, moreover, the circuit court erred in deciding this issue on a Rule 12(b)(6) or Rule 9(b) motion to dismiss. On this point,

---

[2] The duty to disclose is ruled upon in the circuit court's initial order of dismissal entered on November 11, 2005. The final order of dismissal dated January 23, 2006, brings up all intermediate orders for purposes of appeal. *See* Ark. R. App. P. – Civ. 2(b) (2006).

Wal-Mart underscores the fact that Coughlin executed annual Certifications and Disclosures for the corporation for eight years, confirming there was no wrongdoing on his part.

Coughlin's response centers again on the fact that Wal-Mart released all "known and unknown" claims against him, which, he argues, includes any affirmative misrepresentations. He adds that the circuit court correctly found that Wal-Mart failed to plead a specific nexus between Coughlin's alleged fraud in executing those documents and the signing of the Retirement Agreement and Release.

This court has held that a misrepresentation of facts amounting to fraud can render a release of claims ineffective and, in addition, present a question of fact for the jury. *See Malakul v. Altech Arkansas, Inc.,* 298 Ark. 246, 766 S.W.2d 433 (1989); *Creswell v. Keith,* 233 Ark. 407, 344 S.W.2d 854 (1961). Furthermore, we have said that releases contained in contracts do not relieve a party of liability for fraud if that party obtained the contract by fraud. *See Allen v. Overturf,* 234 Ark. 612, 353 S.W.2d 343 (1962).

In order to prove fraud, a plaintiff must prove five elements under Arkansas law: (1) that the defendant made a false representation of material fact; (2) that the defendant knew that the representation was false or that there was insufficient evidence upon which to make the representation; (3) that the defendant intended to induce action or inaction by the plaintiff in reliance upon the representation; (4) that the plaintiff justifiably relied on the representation; and (5) that the plaintiff suffered damage as a result of the false representation. *See Bomar v. Moser,* 369 Ark. 123, 251 S.W.3d 234 (2007).

This court has further said regarding fraudulent inducement:

> Fraud cannot be an agreement. It is an imposture practiced by one upon another. It may be used as an inducement to enter into an agreement. Defendant does not claim that he entered into an agreement that affects the validity of the contract, but that he was induced by false representations to enter into the contract. If that be true the validity of the contract is not assailed, but its very existence is destroyed. To constitute fraud by false representation there must be a representation of alleged existing fact; that representation must be false in fact; it must be made with intent to deceive, and the person to whom it is made must believe it.

*Allen*, 234 Ark. at 615-16, 353 S.W.2d at 345 (quoting *Scarsdale Pub. Co. v. Carter*, 116 N.Y.S. 731, 735 (1909)).

The circuit court ruled in its final order that Wal-Mart failed to plead fraudulent inducement with particularity, as required by Rule 9(b) of the Arkansas Rules of Civil Procedure. We disagree. Wal-Mart clearly pled the following facts supporting fraud in its First Amended Complaint: (1) Coughlin made false representations in the Certifications and Disclosures he submitted pursuant to the Sarbanes-Oxley Act and Wal-Mart's internal control policy, when he stated that neither he nor the members of his family had received personal benefits from Wal-Mart and that he was not aware of any officer who had committed acts of fraud or violated Wal-Mart's ethics policy; (2) Coughlin knew that the representations made within the Certifications and Disclosures were false as Coughlin had stolen hundreds of thousands of dollars in money and property from Wal-Mart; (3) Coughlin intended to induce Wal-Mart to act in reliance on these misrepresentations in making decisions regarding Coughlin's executive responsibilities and his compensation and benefits as Coughlin continually assured Wal-Mart that he was complying with his fiduciary duties as an officer and director; (4) Wal-Mart justifiably relied on these misrepresentations in the Certificates and Disclosures in making decisions to promote Coughlin both as an officer and director and in making the decision to offer Coughlin a lucrative Retirement Agreement; and (5) Wal-Mart suffered damages as a result of the misrepresentations as Wal-Mart would not have entered into the Retirement Agreement and Release except for Coughlin's misrepresentations. Wal-Mart further pled that Coughlin's representations in the Certifications and Disclosures were a substantial factor in its decision to sign a Retirement Agreement and Release.

Because Wal-Mart has pled a claim for fraudulent inducement of the Retirement Agreement and Release with particularity, we hold that the circuit court erred in dismissing Wal-Mart's fraudulent-inducement claims on the grounds that it was insufficiently pled under either Rule 12(b)(6) or Rule 9(b).

We turn then to the issue of whether the Release bars Wal-Mart's claim that the Retirement Agreement and Release were fraudulently induced by Coughlin's affirmative misrepresentations. Wal-Mart contends that the circuit court erred in finding that the use of the words "known or unknown" bars its claim for fraudulent inducement of the Retirement Agreement and Release. It asserts that the use of "unknown" does not foreclose the factual

inquiry of whether the Release itself was the product of fraud. Coughlin counters that the circuit court found that there was no fraud perpetrated by him specifically for the purpose of procuring the Release. He emphasizes, once more, that Wal-Mart made no inquiry into his undisclosed wrongdoings and that he made no misrepresentation about his past behavior for purposes of obtaining the Retirement Agreement and Release. He echoes the circuit court in arguing that in order to void a contract based on fraud, there must be a specific link or nexus, between the fraud committed and the circumstances surrounding the execution of the contract.

This leads to the core question of what intent is necessary to void the Retirement Agreement and Release. Is an intent to mislead perpetrated over multiple years in documents filed by Coughlin with Wal-Mart and in accordance with SEC Regulations sufficient? Or must the intent to mislead be specifically directed at the Retirement Agreement and Release? Or are the two irrevocably intertwined?

Two Arkansas cases and a decision from the Eighth Circuit Court of Appeals are instructive on this issue. In *Wilson v. Southwest Casualty Insurance Co.*, 228 Ark. 59, 305 S.W.2d 677 (1957), this court held that a release, which purported to bar all claims, "known or unknown," did not bar a claim that the release was executed because of fraudulent misrepresentation. This court observed in *Wilson* that the issue of fraud in the procurement of a release was properly a question of fact for the jury. *Id.* Similarly, in *Barry v. Barry*, 78 F.3d 375 (8th Cir. 1996), the Eighth Circuit Court of Appeals distinguished between releasing mature fraud claims of which the plaintiff was cognizant and releasing a claim of fraud that induced the plaintiff to sign a release. The Eighth Circuit explained:

> [a]lthough the later discovery of additional fraud does not invalidate the release of a mature fraud claim, *see Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 527 (2d Cir.1985), the same principle does not apply when a plaintiff who justifiably relies on fraudulent information is induced to sign a release for fraud claims that she did not know existed.

*Barry*, 78 F.3d at 381.

Moreover, in *Malakul, supra*, this court held that misrepresentations made throughout the course of an overarching, fraudulent scheme were sufficient to induce the plaintiffs into signing a

release of claims. In that case, the defendants misrepresented to the plaintiffs that they had invented a low pressure distillation system and discovered a way to produce alcohol from waste, thus reducing this country's dependence on foreign oil. The plaintiffs and defendants signed a partnership agreement and entered into a joint venture for manufacturing this invention, and the plaintiffs invested large sums of money into the venture. The defendants failed to manufacture the invention properly and, instead, deposited the money received from the plaintiffs into their own personal bank account. The plaintiffs later filed suit against the defendants for fraudulent inducement of the partnership agreement. The defendants argued that a release of claims between the parties barred the lawsuit.

This court rejected the defendant's release argument and said:

> [m]isrepresentations amounting to fraud may be shown to set aside a release. *Creswell v. Keith*, 233 Ark. 407, 344 S.W.2d 854 (1961). It has also been held plaintiffs are entitled to assert the fraud they claim if the entire transaction fatally infects the release upon which the defendants rely. *Schine v. Schine*, 254 F.Supp. 986 (S.D.N.Y. 1966); *see also Fitzwater v. Lambert & Barr, Inc.*, 539 F.Supp. 282 (W.D. Ark. 1982). Here, [the plaintiff] testified that when he signed the release, he still believed [the defendant's] representations that he had been putting his share of the money into the venture, that the equipment was free from debt, and that the plant which had been constructed was a commercial production facility. In short, these misrepresentations, and others, typified the entire transaction or venture which also led to [the plaintiff] signing the release now in issue. Thus, the evidence supports the view that the release was fatally infected by the [the defendant's] overall fraudulent scheme, and we believe the chancellor was correct in deciding the release was not a valid settlement of the claims of Altech and the [plaintiffs].

*Malakul*, 298 Ark. at 251-52, 766 S.W.2d at 436-37.

To repeat in part, Wal-Mart alleges in its First Amended Complaint that the misrepresentations contained in the Certifications and Disclosures induced Wal-Mart to believe that Coughlin was complying with his fiduciary duties, and this was a substantial factor in Wal-Mart's decision to execute the Retirement Agreement and Release. Wal-Mart continues that even if the misrepresentations in the Certifications and Disclosures were not made

with the specific intent to induce Wal-Mart to sign the Release, they were part of an overall fraudulent scheme that fatally infected the execution of the Retirement Agreement and Release. Coughlin's principal contention is that the circuit court correctly ruled that the Certifications and Disclosures were made pursuant to SEC Regulations and internal controls and not with the specific intent of fraudulently inducing Wal-Mart to sign the Retirement Agreement.

The circuit court made the following finding of fact in its final order:

> Specifically, Wal-Mart fails to allege how, when, and to whom Coughlin made his Certifications and Disclosures to induce the Retirement Agreement and Release. We believe that these statements were made for a different purpose and lacked any connection to the Retirement Agreement and Release. The Certifications were required by the Sarbanes-Oxley Act and SEC regulations while the Disclosures were required by Wal-Mart's internal corporate controls. Neither could have been made to induce the Retirement Agreement and Release that was signed at a later date.

The intent of Coughlin to fraudulently induce the signing of the Retirement Agreement and Release by executing the Certifications and Disclosures and the justifiable reliance by Wal-Mart on those documents are critical issues in this case and material issues of fact for the jury to decide. *See Tyson Foods v. Davis*, 347 Ark. 566, 66 S.W.3d 568 (2002); *Creswell, supra.* By ruling as it did, the circuit court invaded the province of the jury by determining what Coughlin's intent was vis-à-vis the Retirement Agreement and Release.

We reverse the circuit court.

### III. Conclusion

To summarize, we hold that Wal-Mart specifically pled that Coughlin breached his fiduciary duty to divulge material facts relating to his fraudulent conduct to Wal-Mart prior to executing the Retirement Agreement and Release, so as to withstand a Rule 12(b)(6) dismissal. We reverse the circuit court on this point and remand for further proceedings.

We further hold that fraudulent inducement, both with respect to the duty to disclose and affirmative misrepresentations, was pled with particularity by Wal-Mart in its First Amended

Complaint and that a claim was stated. We hold, in addition, that Arkansas law is clear that a release induced by fraud is invalid. The circuit court erred in ruling, as a matter of law, that Coughlin by his affirmative misrepresentations had insufficient intent to fraudulently induce the Retirement Agreement and Release. The question of whether Coughlin, by his actions, exhibited the requisite intent to fraudulently induce the Retirement Agreement and Release is a question of fact for the jury. We reverse the circuit court on this finding as well and remand the case for further proceedings.

Reversed and remanded.

SPECIAL JUSTICES JANET MOORE and LINDA COLLIER join in this opinion.

CORBIN and DANIELSON, JJ., not participating.