2009 Ark. App. 225

**RAUSCH COLEMAN HOMES, LLC, Appellant,**

v.

**Gene BRECH, et al., Appellees.**

**No. CA 08–1113.**

Court of Appeals of Arkansas.

April 1, 2009.

Dover Dixon Horne PLLC, by: Thomas S. Stone, Little Rock, for appellant.

Russell D. Carter, III, P.A., by: Russell D. "Davy" Carter, III, Cabot, for appellees.

ROBERT J. GLADWIN, Judge.

Appellant, Rausch Coleman Homes, LLC, appeals the July 18, 2008 order of the Lonoke County Circuit Court granting summary judgment to appellees, who are thirty-two owners and residents of the land development at issue. Appellant argues that the trial court erred as a matter of law in granting appellees' motion for summary judgment because the trial court improperly construed the bill of assurance. We disagree and affirm the trial court's order.

Appellant is the owner of numerous lots in both Phase I and Phase II of Southern Comfort Estates in Cabot, Arkansas. Appellees are thirty-two owners and residents of Southern Comfort Estates Phase I and Phase II. The bill of assurance for Southern Comfort Estates Phase II provides that the minimum size for a principal residential structure would be 1700 square feet, heated and cooled. The bill of assurance also provides as follows:

20. DURATION OF COVENANTS. These covenants and restrictions are to run with the land and shall be binding upon all parties and all persons claiming under them until January 1, 2024, at which time said covenants and restrictions shall automatically be extended for successive periods of (10) ten years from each termination, unless 70% of the then owners of the lots agree in writing to amend said covenants and restrictions, either in whole or in part.

21. TO CHANGE THE COVENANTS. These covenants and restrictions shall not be amended, canceled, or supplemented unless an instrument signed by the owners of at least 70% of the then owners of the lots is placed on record agreeing to change the covenants and restrictions in whole or in part.

Also at the center of this litigation is a document entitled "Amendment to Bill of Assurance of Southern Comfort Estates, Phase II," which was executed on February 29, 2008. It purported to change the minimum size for principle residential structures from 1700 to 1400 square feet, heated and cooled.

Appellees filed a Complaint for Injunction in Lonoke County Circuit Court on March 25, 2008. They asserted that they had complied with the restrictive covenants contained in the bills of assurance "at great expense" and relied on their enforcement to "maintain their desired life style and property values." Appellees alleged that appellant had wrongfully obtained four building permits[1] from the City of Cabot, and that the four house plans did not meet the minimum square footage requirements of the respective bills of assurance. Appellees contended that they would suffer irreparable harm if appellant were allowed to construct these houses and requested an injunction.

Appellant Rausch Coleman Homes, LLC, filed a motion for summary judgment on April 25, 2008, essentially arguing that there was no basis for an injunction because the proposed buildings were with-

---

1. Three were in Phase II and one in Phase I. The permit for the house in Phase I was amended to reflect 1910 square feet of heated and cooled space, thus conforming with the bill of assurance for Phase I. Therefore, request for injunction became moot as to the Phase I house.

in the requirements of the properly amended bill of assurance. A hearing was held on June 20, 2008, and the trial court thereafter issued a letter ruling denying appellant's motion for summary judgment. Appellees filed a motion for summary judgment on July 2, 2008.

On July 18, 2008, the circuit court entered an order denying appellant's motion for summary judgment and granting appellees' motion for summary judgment. The trial court found that "the plain language of paragraph twenty (20) of the Bill of Assurance of Phase II of Southern Comfort Estates of Lonoke County, Arkansas, prohibits any amendment of the Bill of Assurance until the year of 2024." The trial court noted that restrictions on land are not favored in the law, but found that because the language of the bill of assurance clearly and unambiguously prohibited any amendment until 2024, the instrument styled "Amendment to Bill of Assurance of Southern Comfort Estates, Phase II, Lonoke County, Arkansas" filed of record on March 4, 2008, violated paragraph twenty (20) of the bill of assurance. Appellant was enjoined from constructing any buildings inconsistent with the bill of assurance filed of record on July 24, 2006. This appeal timely followed.

■ Normally, on a summary-judgment appeal, the evidence is viewed most favorably for the party resisting the motion and any doubts and inferences are resolved against the moving party, but in a case where the parties agree on the facts, the appellate court simply determines whether the appellee was entitled to a judgment as a matter of law. *Aloha Pools & Spas, Inc. v. Employer's Ins. of Wausau,* 342 Ark. 398, 39 S.W.3d 440 (2000). Our supreme court has written:

> [R]estrictions upon the use of land are not favored in the law. Further, a restrictive covenant will be strictly construed against limitations on the free use of land. Thus, all doubts are resolved in favor of the unfettered use of land.
>
> . . . .
>
> Any restriction on the use of land must be clearly apparent in the language of the asserted covenant. Where the language is clear and unambiguous, the parties will be confined to the meaning of the language employed, so long as the meaning does not defeat the plain and obvious purpose of the provision. In addition, we have said that the general rule governing the interpretation, application, and enforcement of restrictive covenants is that the intention of the parties as shown by the covenant governs.

*Cochran v. Bentley,* 369 Ark. 159, 166, 251 S.W.3d 253, 260 (2007) (internal citations omitted).

■ The rule of strict construction is limited by the basic doctrine of taking the plain meaning of the language employed. *Holaday v. Fraker,* 323 Ark. 522, 920 S.W.2d 4 (1996). The first rule of interpretation of a contract is to give to the language employed the meaning that the parties intended. *Wal–Mart Stores, Inc. v. Coughlin,* 369 Ark. 365, 255 S.W.3d 424 (2007). The court must consider the sense and meaning of the words used by the parties as they are taken and understood in their plain and ordinary meaning. *Id.* It is a well-settled rule that the intention of the parties is to be gathered, not from particular words and phrases, but from the whole context of the agreement. *Id.* Different clauses of the contract must be read together and the contract construed so that all of its parts harmonize, if that is possible. *See Tyson Foods, Inc. v. Archer,* 356 Ark. 136, 147 S.W.3d 681 (2004). The best construction is that which is made by viewing the subject of the contract, as the mass of mankind would view it, as it may

safely be assumed that such was the aspect in which the parties themselves viewed it. *Magic Touch Corp. v. Hicks*, 99 Ark.App. 334, 260 S.W.3d 322 (2007). Language is ambiguous if there is doubt or uncertainty as to its meaning and it is fairly susceptible to more than one equally reasonable interpretation. *Id.*

The issue in this case is whether the bill of assurance for Phase II allowed for amendment of its covenants prior to January 1, 2024. Appellant argues that the covenant at issue could be amended at any time by agreement of seventy percent of the then owners. First, appellant points to the language and punctuation of Paragraph 20. Appellant urges this court to view the renewal provision, which is set off by commas, as a "separate provision." Appellant is arguing that Paragraph 20 should be read as stating that the covenants shall be binding until 2024 unless seventy percent of the owners agree in writing to amend them and that it had the authority under the original bill of assurance to amend as it did.

Furthermore, appellant contends that the use of the word "unless" is significant as meaning "except on the condition that." However, there is no disagreement that the covenants contained in the bill of assurance can be amended on the condition that seventy percent of the then owners agree to the amendment in writing; the question is *when* that amendment can take place.

Appellant's next argument is that Paragraph 20 must be read in conjunction with Paragraph 21. It is true that different clauses of a contract must be read together and the contract construed so that all of its parts harmonize, if that is at all possible. *Tyson Foods, Inc. v. Archer*, *supra.* A construction that neutralizes any provision of a contract should never be adopted if the contract can be construed to give effect to all provisions. *Id.* However, we agree with appellees that paragraph twenty-one simply provides the proper procedures for which the then owners of the lots must take to amend the covenants during the times authorized by the preceding paragraph.

In the case of *Barber v. Watson*, 330 Ark. 250, 953 S.W.2d 579 (1997), the supreme court interpreted the language of a bill of assurance to determine when amendment could take place. The bill of assurance read:

The covenants and restrictions of the Bill of Assurance shall be binding for a period of 25 years from the date of recording, after which time the covenants and restrictions shall be automatically extended for successive periods of ten years unless an instrument signed by a majority of the owners has been recorded agreeing to change or terminate the covenants and restrictions.

*Id.* at 253, 953 S.W.2d at 581.

The supreme court concluded that this language was clear and unambiguous. It found that the twenty-five year period provided in the original bill of assurance would have expired in November 1993, making the amended bill of assurance executed in August 1995 untimely and therefore invalid. *Id.* The court cited to *White v. Lewis*, 253 Ark. 476, 487 S.W.2d 615 (1972), another case the parties cite as significant here. In *White v. Lewis*, our supreme court held that the bill of assurance providing that covenants restricting the use of land in a subdivision to residential purposes were to be binding for twenty-five years from the date of recordation, after which they could be automatically extended for successive periods of ten years. The supreme court noted there that, unless an instrument signed by a majority of property owners was filed agreeing to change in whole or in part, the bill of assurance could not be amended

prior to the end of the twenty-five-year period. *Id.*

Appellant attempts to distinguish our case by pointing out that the bill of assurance in *Barber* was unambiguous because it used the language "after which" and contained no separate amendment clause. Appellees, on the other hand, argue that the restrictive ₈covenants in *Barber* and *White* are "virtually identical" to the one at issue and that the supreme court's interpretation in those cases requires that the trial court's interpretation be affirmed in this case. We agree. There is no reason for the January 1, 2024 date to be included in the bill of assurance other than as the beginning point for the then owners to be able to amend the covenants. While appellant makes a fairly persuasive argument, the plain language and simple logic dictate otherwise. Accordingly, we affirm.

Affirmed.

ROBBINS and BAKER, JJ., agree.