# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-1402

_____

Donald Dunn, Husband; Kay Dunn, Wife; Mike Womak; Vicki Raub; Greg
O'Neal, Husband; Jo Alice O'Neal, Wife; Bill Pickens, Husband; Carolyn Pickens,
Wife; Charlie Duvall, Husband; Rima Duvall; Theresa Ferrugia; John Inglehart;
Dave Millr, Husband; Billie Kay Miller, Wife; Harold White, Husband; Hensley
White, Wife; Mike Marshall, Husband; Sammy Marshall, Wife; Bill Ackerman,
Husband; Bootsi Ackerman, Wife; Richard Cross, Husband; Jennifer Cross, Wife;
T. L. Lauerman; Gary Beck; Manfred Hensler; Ethan Wright, Husband; Jinger
Wright; Mike Schuster, Husband; Jan Schuster, Wife; Ed Czaja, Husband; Susan
Czaja, Wife; Rod Engle, Husband; Rita Engle, Wife; Borum Cooper; Jim Bailey;
Tom Hearne; Wayne Bodenhamer, Husband; Loretta Bodenhamer, Wife

*Plaintiffs - Appellants*

v.

Jason Aamodt, Husband; Maria Aamodt, Wife

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Western District of Arkansas – Harrison

_____

Submitted: September 17, 2012
Filed: October 10, 2012

_____

Before MELLOY, BEAM, and BENTON, Circuit Judges.

_____

MELLOY, Circuit Judge.

Appellants, property owners in Phase "A" of the River Ridge Park Subdivision ("the Subdivision") in the City of Norfork, Arkansas, filed a declaratory judgment action against Jason Aamodt and Maria Aamodt (together, "the Aamodts"). Appellants allege that the Aamodts, who also own property in Phase "A" of the Subdivision, violated (and continue to violate) certain restrictive covenants by renting their property to friends and others to use as a vacation home. The parties filed cross-motions for summary judgment, and the district court[1] granted the Aamodts' motion and denied Appellants' motion. We affirm.

I.

In September 2009, the Aamodts purchased as a second home[2] a house located on Lots #23 and #24 in Phase "A" of the of the Subdivision ("the Property"). When the Aamodts are not using the Property, they rent it to their friends and other guests as a vacation home. The Property, as part of Phase "A" of the Subdivision, is subject to Instrument No. 2674-87 ("the Restrictive Covenants"). The parties' dispute centers around a single provision of the Restrictive Covenants—Section 6—which states as follows:

> 6. BUILDING SITE: A lot (or tract), or a lot and a portion of an adjacent lot, having a minimum size of 1.5 acres shall constitute a

---

[1]The Honorable Paul K. Holmes, III, Chief United States District Judge for the Western District of Arkansas.

[2]The Aamodts' primary residence is in Tulsa County, Oklahoma.

building site. Sites must be used for residential purposes only except Lots #1, #2, and #4, which are designated as commercial or residential.[3]

Appellants contend that the Aamodts violate Section 6 because renting the Property constitutes a nonresidential use. Accordingly, Appellants filed suit in the Circuit Court of Baxter County[4] seeking (1) a declaration that the Aamodts' short-term rental of the Property violates the Restrictive Covenants and (2) a temporary and permanent injunction prohibiting the Aamodts from continuing to use the Property for what Appellants allege is a "commercial operation." The Aamodts argue that the Restrictive Covenants do not contain any language that prohibits them from renting the Property, and that just because they receive money for renting the Property does not mean that the Property is being used for a nonresidential purpose.

II.

We review the district court's decision on cross-motions for summary judgment *de novo*. Humphries v. Pulaski Cnty. Special Sch. Dist., 580 F.3d 688, 692 (8th Cir. 2009). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Sturge v. Nw. Airlines, Inc., 658 F.3d 832, 839 (8th Cir. 2011). Here, the parties stipulated that "there are no disputed facts in this case and that the resolution of the issue before the Court is solely one of law." Because this case was removed to federal court based on diversity jurisdiction, we apply Arkansas law as

---

[3]Certain lots in the Subdivision were previously replatted and subsequently designated as "Commercial or Residential." The Property is not located on any of those lots, however, and the parties agree that it is to be used for "residential purposes only" as set forth in Section 6 of the Restrictive Covenants.

[4]The Aamodts, as citizens of Oklahoma, removed the case to the district court based on diversity jurisdiction pursuant to 28 U.S.C. § 1332.

the law that the forum state would apply.  See S & A Farms, Inc. v. Farms.com, Inc., 678 F.3d 949, 954 (8th Cir. 2012).

## A.

Under Arkansas law, "[a] restrictive covenant is defined as 'a private agreement, usually in a deed or lease, that restricts the use or occupancy of real property, especially by specifying lot sizes, building lines, architectural styles, and the uses to which the property may be put.'"  Hutchens v. Bella Vista Vill. Prop. Owners' Ass'n, Inc., 110 S.W.3d 325, 329 (Ark. Ct. App. 2003) (quoting Black's Law Dictionary 371 (7th ed. 1999)).  Restrictive covenants are not favored, "and if there is a restriction on the land, it must be clearly apparent."  Forrest Constr., Inc. v. Milam, 43 S.W.3d 140, 145 (Ark. 2001).  "The general rule governing [the] interpretation, application, and enforcement of restrictive covenants is that the intention of the parties as shown by the covenant governs," and "[a]ll doubts are to be resolved in favor of the unfettered use of land."  Id.  But "when the language of the restrictive covenant is clear and unambiguous, the parties will be confined to the meaning of the language employed."  Casebeer v. Beacon Realty, Inc., 449 S.W.2d 701, 703 (Ark. 1970).

## B.

Before turning to the question of whether the Aamodts' short-term rental of the Property is for a "residential purpose," we first address whether Section 6 of the Restrictive Covenants is ambiguous.  "The determination of whether ambiguity exists is ordinarily a question of law for courts to resolve."  Magic Touch Corp. v. Hicks, 260 S.W.3d 322, 326 (Ark. Ct. App. 2007).  "Language is ambiguous if there is doubt or uncertainty as to its meaning and it is fairly susceptible to more than one equally reasonable interpretation."  Rausch Coleman Homes, LLC v. Brech, 303 S.W.3d 456, 459 (Ark. Ct. App. 2009).

Appellants maintain that the "residential purposes" language in Section 6 is not ambiguous, and that the Restrictive Covenants were plainly intended to prohibit short-term rental of the subject properties. Appellants base this assertion on the fact that Section 6 distinguishes between "residential" purposes and "commercial" purposes. But this distinction alone does not impart meaning to the phrase "residential purposes."

The Arkansas cases cited by Appellants that interpret "residential purpose" also provide little guidance here insofar as those cases pertain to activities that are plainly not residential (*e.g.*, paving a roadway that connects to land outside the covenanted subdivision, Briarwood Apartments v. Lieblong, 671 S.W.2d 207, 208 (Ark. Ct. App. 1984); locating a community septic system on a lot bound by a residential-use covenant, Royal Oaks Vista, L.L.C. v. Maddox, 271 S.W.3d 479, 484–85 (Ark. 2008)). Short-term rental of a house as a vacation home is a closer call.[5]

_____

[5]Appellants also cite McGhee v. Witcher, 101 S.W.3d 262 (Ark. Ct. App. 2003), and McGuire v. Bell, 761 S.W.2d 904 (Ark. 1988). But the appeal in McGhee pertained to a procedural issue regarding waiver, and the court remanded the case without reaching the merits of whether operating a day-care from a home was a commercial (or business) use of the land. 100 S.W.3d at 264. On remand, the trial court found that operating the day-care violated the bill of assurance and enjoined the homeowner from further operation. See Witcher v. McGhee, 184 S.W.3d 474, 475 (Ark. Ct. App. 2004). Appellants argue that McGhee applies here because "surely the children housed [at the day-care] were eating, sleeping, living, playing, etc." We find McGhee inapplicable, however, because the hourly care of children is incongruous to the overnight, multi-day rental of a house. Moreover, the McGhee court indicated that the bill of assurance pertained to a *prohibition* on a commercial or business use of a property, not a *mandate* that a property be used for a certain limited purpose, as here. See 101 S.W.3d at 262.

McGuire is also not informative. In McGuire, property owners sought a declaration that "a residential care facility or group home for the . . . developmentally disabled can be considered a residence, or more narrowly, a single-family residence." 761 F.2d at 910. The McGuire court declined to make any such determination,

-5-

The Aamodts assert that "residential purposes" in Section 6 is ambiguous—at best—as to short-term rental of a property. The Aamodts argue that this alleged ambiguity entitles them to judgment as a matter of law because Arkansas law requires that "all doubts [be] resolved in favor of the unfettered use of land." Forrest Constr., Inc. v. Milam, 43 S.W.3d 140, 145 (Ark. 2001).

We agree with the Aamodts that the phrase "residential purposes" is ambiguous as to the short-term rental of property. Section 6—and the Restrictive Covenants as a whole—do not address whether a lot in Phase "A" of the Subdivision can be rented on a short-term basis as a vacation home, and Arkansas courts have not had the occasion to rule on whether the short-term rental of a property is within the purview of "residential purposes." The restriction that Appellants would impose on the Property is thus not "clearly apparent" from the plain language of the Restrictive Covenants. See id. at 145–46.

Accordingly, the Arkansas rule of strict construction favoring the "unfettered use of land" requires that we affirm the judgment of the district court.

C.

Both Appellants and the Aamodts assert that whether the phrase "residential purposes" is ambiguous is dispositive of this case. Nevertheless, the parties briefed the merits regarding what stance Arkansas should take on whether the short-term rental of property is a "residential purpose." Under Arkansas law, "[t]he best construction is that which is made by viewing the subject of the contract, as the mass of mankind would view it, as it may safely be assumed that such was the aspect in which the parties themselves viewed it." Rausch Coleman Homes, LLC v. Brech, 303

---

however, because it lacked "detailed information concerning . . . the specific use for which [the property] [would] be purchased." Id.

S.W.3d 456, 458–59 (Ark. Ct. App. 2009); see Skinner v. Seliga, No. CA 08-1395, 2009 WL 1362860, at *2 (Ark. Ct. App. May 13, 2009) ("A restrictive covenant is considered a private agreement that rests on the contractual basis of mutual obligation."). Thus, while not binding, other states' decisions on whether the short-term rental of a property qualifies as a "residential purpose" are instructive.

In Scott v. Walker, 645 S.E.2d 278 (Va. 2007), cited by the Aamodts, the Supreme Court of Virginia considered whether a restrictive covenant prohibited the short-term rental of a single-family dwelling on a nightly and weekly basis. Id. at 279–80. The covenant at issue stated that "No lot shall be used except for residential purposes." Id. at 280. The Scott court construed the covenant under a similar framework as the one employed by Arkansas courts and determined that the language "residential purposes" was ambiguous as to short-term rentals. Id. at 283 ("If the restrictive covenant at issue was intended to prevent the short-term rental of lots . . . it would have been easy to say so, and it would not likely have been left to the uncertainty of inference." (citation and internal quotation marks omitted)). The Scott court, relying on its own case law as well as decisions from other jurisdictions, held that "[t]he restrictive covenant does not by express terms prohibit the short-term rental of the [subject] lot," and that "[i]n the absence of language expressly or by necessary implication prohibiting nightly or weekly rentals, we find that the [defendants'] short-term rental of their property did not run afoul of the restrictive covenant at issue." Id. at 217, 218. The same result follows here.

Similarly, in Yogman v. Parrott, 937 P.2d 1019 (Or. 1997), also cited by the Aamodts and relied upon in the Scott decision, the Oregon Supreme Court held that the covenant, "All lots . . . shall be used exclusively for residential purposes and no commercial enterprise shall be constructed or permitted on any of said property[,]" did not preclude the defendants from renting to others their beach-front house as a vacation home. Id. at 1023. The Yogman court first determined that the phrases "residential purposes" and "commercial enterprise" were both ambiguous. Id. at

1021–22. The court then resorted to a construction scheme similar to that of Arkansas courts for interpreting restrictive covenants. The <u>Yogman</u> court held that "defendants' rental of the property is permissible[] because that use is not plainly [restricted by] the provisions of the covenant." <u>Id.</u> at 1023 (citation and internal quotation marks omitted). As with <u>Scott</u>, we reach the same result here.[6]

Appellants also cite to several cases that they believe require this Court to reach a  different conclusion. First, Appellants rely on the Tennessee case <u>Carr v. Trivett</u>, 143 S.W.2d 900 (Tenn. Ct. App. 1940) (cited in <u>Parks v. Richardson</u>, 567 S.W.2d 465 (Tenn. Ct. App. 1977)). In <u>Carr,</u> the court held that the operator of a

---

[6]The Aamodts and the district court also cite <u>Pinehaven Planning Board v. Brooks</u>, 70 P.3d 664 (Idaho 2003). In <u>Brooks</u>, the Idaho Supreme Court held that "renting [a] dwelling to people who use it for the purposes of eating, sleeping, and other residential purposes does not violate the prohibition on commercial and business activity as such terms are commonly understood." <u>Id.</u> at 668. But while the outcome in <u>Brooks</u> supports the Aamodts' position, the covenant in <u>Brooks</u> is distinguishable. Unlike Section 6, the covenant in <u>Brooks</u> does not limit the use of property for a single purpose, but instead precludes certain uses from among many possible uses. <u>See id.</u> ("Renting the property for residential purposes, whether short or long-term, does not fit within these *prohibitions*. . . . Pinehaven Covenants do not *limit* the use of residential property to residential purposes." (emphases added)); <u>see also supra</u> note 5 (distinguishing <u>McGhee</u> on the same basis).

Additionally, the covenants in <u>Brooks</u> expressly provided two references—the Uniform Building Code and Webster's Dictionary—to define terms not defined by the covenants themselves. <u>Id.</u> at 665–66. The <u>Brooks</u> court relied, at least in part, on these extrinsic sources of evidence when construing the covenants and finding that they were not ambiguous. <u>See, e.g., id.</u> at 668 ("[T]he Covenants by their own terms incorporate the definitions provided in the Uniform Building Code and . . . the Uniform Building Code adopts a rather broad definition of residential, including apartment houses and hotels."). Here, however, the Restrictive Covenants do not reference any extrinsic evidence for construing the terms contained therein, and thus we reach a different result as to ambiguity.

tourist home violated a covenant restricting use of the property to "residential purposes" by renting four of eight rooms in the home. 143 S.W.2d at 904. The court based its decision in large part on the fact that twelve to fifteen tourists per week passed through the home during the busy season. Id. at 902, 904. The court indicated, however, that if the circumstances were different, it may have reached a contrary result. See id. at 904 (stating that "the renting of a room or two or the keeping of a small number of boarders . . . would not be violative of the spirit and purpose of the restrictions"). Because Appellants have not presented evidence that the number of weekly renters rises to the same level as that in Carr, or that their home values have depreciated as a result of the Aamodts renting the Property, see id., Carr is not persuasive.

Appellants also rely on the Texas case Benard v. Humble, 990 S.W.2d 929 (Tex. App. 1999). In Benard, the appellants were renting homes on a weekly or weekend basis, and the court determined that such use violated a covenant that "No lot shall be used except for single-family residence purposes." Id. at 931. The court, acknowledging that "[t]he term 'residence' is an elastic one and is extremely difficult to define," id. at 931, employed a liberal construction to the covenant's language. See id. at 930–31 ("We believe that the legislature . . . intended that restrictive covenants be construed in a manner which may occasionally run hard afoul of strict common law requirements, i.e., strict construction favoring grantee, and strict construction against the drafter."). But because Arkansas follows the doctrine of strict construction, see Forrest Constr., Inc. v. Milam, 43 S.W.3d 140, 145 (Ark. 2001), Benard does not apply here.

In sum, we find the Virginia and Oregon decisions in Scott and Yogman to be persuasive and would adopt their reasoning if the Arkansas rules of construction were inadequate to resolve this case. Nevertheless, we note that the Arkansas Supreme Court is best suited to decide this question of state law, and we base our judgment on the dispositive nature of the ambiguity of the Restrictive Covenants.

## III.

For the reasons set forth above, we hold that the Aamodts' rental of the Property does not violate the Restrictive Covenants. We thus affirm the district court's grant of summary judgment to the Aamodts and its denial of summary judgment to the Appellants.

_____