JOSIE V. DANIEL BROUSSARD V. M. J. TIAN ET AL.*

No. A-5909. Decided November 7, 1956.
Rehearing overruled December 5, 1956.
(295 S.W. 2d Series 405)

*Certiorari to Supreme Court of the United States denied 353 U.S. 941, 77 Sup. Ct. 811, 1 L. Ed. 2d 58.

*Roberts, Baker, Richards, Elledge & Cunningham,* of Houston, *F. B. Kimbell,* of Groesbeck, and *Fred C. Reeder,* of Corpus Christi, for petitioner.

The Court of Civil Appeals erred in holding that the district court did not err in overruling petitioner's motion for judgment, notwithstanding the verdict, for title and possession of an undivided five-thirteenths interest in the 520.5 acres of land involved in this litigation. Gleich v. Bongie, 128 Texas 606; 99 S.W. 2d 881; John Hancock Mut. Ins. Co. v. Bennett, 133 Texas 450, 128 S.W. 2d 791; Wilson v. Wilson, 145 Texas 607, 201 S.W. 2d 226.

*Dodson & Reagan* and *E. M. Dodson,* of Marlin, for respondents.

MR. JUSTICE GARWOOD delivered the opinion of the Court.

This suit is one by the petitioner-plaintiff, Mrs. Broussard, for her half of an alleged 10/13 community interest in 520.5 acres of land in Limestone County, which latter was purchased by her former husband, the defendant-respondent, Tian, during their marriage, from the Federal Land Bank, the total consideration of $2080 being $480 cash, which was paid out of the separate property of Tian, and $1600 evidenced by a vendor's lien executed by him. Joined as codefendants were certain grantees or successors in title to Tian, but the rights of these additional parties (including Francis M. and Inez James, who admittedly may be now considered as without interest in the property) are not alleged to be any better than those of the respondent-defendant, Tian. The judgment of the trial court, affirmed by the Court of Civil Appeals (290 S.W. 2d 372) was against the petitioner-plaintiff. Our holding is to the contrary.

■ There is no written purchase contract in evidence. The deed, which ran to Tian, and the vendor's lien note and deed of trust, which he alone executed, contained no recitals pur-

porting to deal with the community or separate status of the purchase or source of the consideration. However, not only the aforementioned $480 cash payment, but also several substantial payments of principal and interest on the note, were made out of the separate property of Tian, the balance due on the note being paid by his codefendant-grantees, and the community estate having thus paid out no money at all on the purchase.

On the other hand, as appears to be conceded—and necessarily so—by the respondents-defendant, the vendor's lien note being executed during the marriage by the husband, who is the community manager, and there being nothing in the note or related instruments to the contrary, the note is by presumption and in legal effect a community obligation, unless somehow lawfully shown to be otherwise. In the absence of any such showing, the result would necessarily be that, to the extent of the face of the note, the community furnished the original consideration for the purchase and thereby acquired a pro tanto ownership in the property, to wit, a 1600/2080 or 10/13 interest, of which the wife's half would be 5/13. The fact that the actual payment of all or some of the installments of the note were later made out of separate funds of the husband would not affect the community ownership, but would merely give rise to a debt or charge in favor of his estate against the community enforceable by appropriate proceedings. Gleich v. Bongio, 128 Texas 606, 99 S.W. 2d 881, in our view amply supports the foregoing statements. See also Solether v. Trinity Fire Inc. Co., 124 Texas 363, 78 S.W. 2d 180.

■ It is also necessarily conceded that, assuming the above-mentioned showing as to the noncommunity character of the note could be made by parol, as, under the facts here, it would have to be if made at all, the respondents-defendant had the burden of making it. In this connection they introduced, over the objection of the petitioner-plaintiff, testimony of Tian which, when taken with other circumstances in evidence, they contend to be proof of an agreement between the grantor, Federal Land Bank, and Tian, sufficient under the above cited decisions, to make the note a separate property obligation of Tian and the property therefore entirely his separate estate. The single jury issue in the case was submitted under this theory, in response to which the jury found that there was such an agreement that the note "would be paid out of the separate property of M. J. Tian." If that finding is invalid, the judgment of the courts below against the petitioner-plaintiff cannot be sustained.

The petitioner-plaintiff asserts, in addition to other contentions, that the finding is wholly unsupported by the above-mentioned proof tendered by the respondents-defendant, even if parol evidence of such an agreement were admissible. We agree with this contention, and accordingly forego ruling on the other points raised by the petitioner-plaintiff, including the question of parol evidence.

The relevant portion of Tian's above-mentioned testimony is set out in the footnote.[1] It does tend to establish that the representatives of the grantor were interested in knowing whether Tian had means of one kind or another so as to render it probable that the note would be paid, and that Tian assured them he had certain means, which were of his separate estate, and intended to use these means to make payment. The respondents-defendant themselves, in their answer to the application, describe this testimony as follows:

"* * * and during this discussion, Johnson asked Tian, 'how he expected to make the deferred payments on this land?' Tian told him that he had just received some bonus money from an oil lease and that he had some royalty under land that was being developed by the Gulf Oil Company, and that he could pay it out of this lease money, or out of the Gulf royalty. He then stated that this property was his separate property."

Then they go on to say that this testimony plus the agreed facts that the sale was duly closed and the cash and sundry installment payments on the note were made by Tian out of his separate property lease money tends to show an "understanding that it (the note) would be paid out of his separate funds as he had stated."

Possibly the proof does amount to an "understanding" in the sense that both parties considered the existence of the oil

---

[1] "Q. What, if anything, did you tell them with regard to how you were going to make those payments, Mr. Tian?"

"A. Mr. Dodson, I stood there, and I guess about 4 or 5 hours talking to him and he asked me emphatically how could I pay it. I said I owned surface soil, I have got royalty in a chain of title under a Gulf lease. I said I have got a lease that I have just made with Stanolind, and I said I can pay it out of the royalty * * *. He (Johnson) told me that he would have to go to the Board of Directors to get permission to all of their agreements. I told him I would pay it out of this lease I had and out of royalty I had from the Gulf.

"Q. Did you or not tell him that was your separate property?

"A. Absolutely my separate, I bought this Gulf out of some money I got from * * *.

"Q. Outside of this 520 acres of land did you buy any real estate during the time that you and your wife were married?

"A. About four or five pieces."

properties in question as a factor favorable to due discharge of the note. But it does not reflect a contract that it was to be paid out of these properties in particular, still less out of the separate property of Tian generally. The tenor of the discussion was simply that of an enquiry by the bank into the general prospects of the note being ultimately paid and an answer to that enquiry. The account of the conversation includes no statement from the bank representatives that they would make or recommend the sale on the strength of Tian's statement about his oil property or that the sale was to be conditioned on such property being retained by him or devoted to payment of the note, which was, of course, already secured by the vendor's lien. Still less is there anything to suggest that the bank, which initiated the discussion, had any interest in whether the source of payment of the note should be separate or community.

The events subsequent to the conversation do not modify or amplify the words favorably to Tian's contention. Considering that the grantor was an institution specializing in land loans and related transactions, the actual consummation of the sale without any written reference to the oil properties or to the separate or community character generally of the purchase suggests that there was not a special contract in this behalf rather than that there was. The fact that the cash consideration and part of the note were later paid out of money accruing from the oil properties might well have been due to reasons other than an obligation so to pay them.

The fact that at the time of the purchase the spouses had been living apart for a considerable period does suggest a motive for Tian to avoid a community obligation; but the possibility or even probability of a general purpose to do business as a single man does not, under the circumstances, afford any proof of a contract between him and the bank to this effect. There is no proof that he discussed his domestic situation with the bank representatives. Actually, his reply to the question of whether he told the bank that his oil properties were separate is equivocal, although we assume it to mean that he did so state.

The judgments below are accordingly erroneous and must be reversed, and the petitioner, Mrs. Broussard, is entitled to recover against the respondents Tian and Burney her 5/13 interest in the property in question. Since the respondents have no alternative pleas for recovery of sums actually paid on the purchase money note, and no reason for remanding the case

thus or otherwise appears, judgment must be here rendered for the petitioner for her interest aforesaid. It is so ordered.

Opinion delivered November 7, 1956.

Rehearing overruled December 5, 1956.