**HEIRS OF David Lee ROSE, Deceased, Appellants,**

v.

**Mrs. Deola HICKEY et al., Appellees.**

**No. 3757.**

Court of Civil Appeals of Texas.

Waco.

May 5, 1960.

Rehearing Denied June 2, 1960.

Tom Solomon, Dallas, Boone & Kirby, Littlefield, for appellants.

Anderson & Anderson, Cleburne, for appellees.

TIREY, Justice.

Plaintiffs' suit is one in trespass to try title. Defendants entered a plea of not guilty. The cause was tried without the aid of a jury, and the Court entered judgment for plaintiffs. There was no request for findings of fact and conclusions of law, and none filed.

In the judgment we find this recital:

"* * * the court is of the opinion and finds that the material allegations in plaintiffs' first amended petition are true; that the property described in plaintiffs' said first amended petition was the separate property of Leona C. Rose, and that plaintiffs are entitled to judgment as prayed for in the first section of said plaintiffs' first amended original petition."

And the Court decreed accordingly.

Defendants assail the judgment on three points, they are substantially to the effect: (1 and 2) The law raises a presumption that all property acquired by either spouse during marriage is community property, and the evidence introduced at the trial is insufficient, as a matter of law, to rebut such presumption; that all of the evidence introduced at the trial proves that part of the consideration for the lots was the community credit of D. L. Rose and Leona C. Rose pledged to the payment of two vendor's lien notes. Therefore, the community estate owned at least a part interest in the lots. (3) At the death of D. L. Rose appellees and appellants became tenants in common of the lots in question, and the evidence introduced at the trial is insufficient, as a matter of law, to prove adverse possession against a co-tenant.

A statement is necessary. The land involved was conveyed to D. L. Rose and his wife, Leona C. Rose, in January 1920; plaintiffs are the heirs of Mrs. Rose by a former marriage, and defendants are the collateral heirs of D. L. Rose. The total consideration of the deed was $2,000 and it recited $650 cash paid, and the further consideration of the assumption of the payment by D. L. Rose and Leona C. Rose of two notes, each in the sum of $675. The record shows that these notes and all interest were fully paid and released December 29, 1920. Mrs. Rose died in 1946, and Mr. Rose in 1947. Pertinent to this discussion Mrs. Deola Hickey testified to the effect that she is the daughter of Mrs. Leona C. Rose; that the first husband of her mother was Joseph Martin Newberry, who was her father; that he died in May 1910; that her mother and father owned several pieces of property in Cleburne at the time of her father's death; that he owned his own home; that such home was built before she was born; that he owned other property; some three houses that he used for rental purposes, and that he left insurance to the amount of $5,000; that her mother did not remarry until her intermarriage with D. L. Rose in 1919; that she lived in the home with her mother from the time of her father's death until about 1918, when she was married; that her mother continued to own their home, and that she had income from this property that her father had left, and that she had money in the bank; that at the time her mother married Mr. Rose she had sufficient money on hand to pay for this property.

"Q. Did you have any way of knowing whether or not she paid for that with her own separate funds, Mrs. Hickey? A. I do not know for sure but I have always understood that she did * * *."

That after her mother and stepfather bought this property that they remodeled it and moved into it and made it their home; that D. L. Rose was a bachelor at the time he married her mother, and no children were born of that marriage; that D. L. Rose had no property or money that she knew of; that he worked at the Santa Fe Shops until the strike, and after that he worked the roads for the city and county and that he worked for a short time for a cleaning company; that "as far as I know he (Rose) just lived from check to check."

"Q. Mrs. Hickey, sometime before your mother's death, did Mr. Rose try to claim all of her separate property? A. He told me less than three weeks before my mother's death that he even owned the property my father left her, at the time my mother was lying in bed.

"Q. Told you what? A. That he had owned the property my father had left us, the rental property, and the home where I was born, and my father had bought it; that he owned all of it.

"Q. Did your mother hear that statement? A. Yes, sir.

"Q. Did she make a statement to him at the time in regard to that? A. She said, 'you are lying, and you know you are lying.'

"Q. After you qualified as executrix under the will, did you take charge of this property on Glen Rose Avenue? A. Yes, sir.

"Q. What did Mr. Rose do with reference to it? A. He turned all the papers, all the papers to the place over to me, and he told me I was to take care of it. But he lived there as his home the rest of his life." * * *

"Q. And he turned the papers over to you? A. Yes, Sir, he turned the papers over to me, and I paid the taxes, and the insurance, etc.

"Q. Since that time, Mrs. Hickey, have you had the use and control and possession of that property? A. I have.

"Q. Have you paid the taxes on it each year as they accrued? A. Yes sir, and they are paid up to date.

"Q. Have you rented the property and collected the rents on it? A. I have.

"Q. Have you during all that time claimed that that property belonged to you and the other heirs of Mrs. Leona C. Rose? A. Yes, sir, I have.

"Q. Has any of the heirs of D. L. Rose, or David Lee Rose, ever claimed any interest in it? A. No, Sir. * *

"Q. And you don't know of your own knowledge that your mother's separate money or property was used to purchase any part of that property, do you? A. I have always understood it that way, but I do not know for sure.

"Q. You don't know of your own knowledge? A. I have no checks or bank accounts or anything from my mother's papers to prove that, but I understood that from a child.

"Q. How did you understand that, how did you do that? A. Just be-cause that is what the talk was in the home, that she paid for it."

Mrs. Hickey testified to the effect that she had rendered the property for taxes since her mother's death, and had paid the taxes thereon each year; that the property was paid for by her mother.

"Q. By whom was it talked about, that she paid for the property out of her own money? A. By my mother, and by my grandmother, and in front of my stepfather. He didn't seem to care. It was just a family affair, and the talk was that mama paid for it.

"Q. In his presence there? A. Yes, sir.

"Q. Have you heard your mother make statements to that effect in his presence? A. Yes, sir.

"Q. Did he deny it? A. He didn't act like he paid any attention to it at all. * * *

"Q. And you have all these years since your mother's death, or immediately after your mother's death, when your stepfather, Mr. D. L. Rose, turned over the papers to you and told you it was yours, to take care of it? A. That's right.

"Q. You have been doing that every since? A. Yes, sir.

"Q. And you have claimed it all those years? A. Yes, sir."

The presumption of community status created by this conveyance under art. 4619, Sec. 1. Vernon's Ann.Civ.Stats., and the nature and extent of the burden of overcoming it are too well settled to require repetition. See Wilson v. Wilson, 145 Tex. 607, 201 S.W.2d 226, 227; Van v. Webb, 147 Tex. 299, 215 S.W.2d 151, 152. So, the question presents itself: Does the evidence heretofore set out, under all the undisputed facts and surrounding circumstances, support the judgment of the trial

court in holding that the plaintiffs discharged their burden? We think it does. First of all, it is without dispute that this purchase was made on the 3rd day of January, 1920, at which time the sum of $650 was paid in cash; thereafter, on the 29th day of December, 1920, the two notes for $675 with all interest thereon were fully paid and the lien released. Now the evidence is without dispute that D. L. Rose had no property, and there is some evidence that he lived from check to check; that at the time the land in suit was purchased, Rose was working for the railroad, and there is no evidence that he had any other source of income. The record shows that this property was bought in January 1920, and was fully paid for before the end of the year; that this marriage took place some time in 1919, the exact date not given; that in January 1920, when the property was purchased, Mrs. Rose owned her own home and three other rental houses, and that she had previously received $5,000 in cash from an insurance company on the life of her first husband. Moreover, it was a matter of family history and general knowledge that this property was fully paid for by Mrs. Rose, and that Rose paid nothing, and that this was the family talk before Rose during his and Mrs. Rose's lifetime, and he never denied it. Bearing in mind that the defendants here tendered no evidence of any nature whatsoever to show that Rose had property or made any contribution at all toward the payment on the property, and the trial judge having had the opportunity to see and hear the witnesses, and the duty of passing upon the facts, in the light of all the surrounding circumstances, found that the property was the separate property of Leona C. Rose. This Court thinks the record is sufficient to support the view and findings of the trial court. See Woods v. Townsend, 144 Tex. 594, 192 S.W.2d 884. Accordingly, the judgment of the trial court is affirmed.

### On Motion for Rehearing.

Appellants, in their motion for rehearing, contend in effect that this Court erred in holding that the testimony tendered is sufficient to support the findings of the Trial Court, because:

" 'All of the evidence introduced at the trial proves that part of the consideration for the lots was the community credit of D. L. Rose and Leona C. Rose, pledged to the payment of two vendor's lien notes. Therefore, the community estate owned at least a part interest in the lots', irrespective of the sufficiency of the evidence on the question of who furnished the down payment for the land, and irrespective of who paid off the notes mentioned in the opinion of the Court."

Appellants further contend that irrespective of the sufficiency of the evidence presented in attempting to establish that Mrs. Leona C. Rose furnished the down-payment on the property, and subsequently paid off the notes, Mrs. Leona C. Rose's claim for separate property status could rise no higher than a 650/2000 interest. They assert that their contention is supported by the doctrine of our Supreme Court announced in Broussard v. Tian, 156 Tex. 371, 295 S.W.2d 405, and cases there cited.

■ We have again carefully reviewed the foregoing opinion of our Supreme Court, and we are now of the view that under that opinion we were in error in holding that the testimony was sufficient to sustain the judgment of the trial court, and that this will require this cause to be reversed and remanded in order that the Court may determine and fix the community interest in such property. Wilson v. Wilson, 145 Tex. 607, 201 S.W.2d 226–227. However, the judgment as to the non-appealing defendants is in all things affirmed. Accordingly, the judgment formerly entered in this court is set aside. The judgment will be entered as of this date in accordance with this opinion. Accordingly, the judgment of the Trial Court is reversed and remanded as to all appellants, but affirmed as to all non-appeal-

ing defendants. All costs in this appeal are assessed against appellees.

Affirmed in part and reversed and remanded in part.