

# ARKANSAS COURT OF APPEALS

DIVISIONS I & IV
No. CV-12-726

| | | |
|---|---|---|
| | | **Opinion Delivered** NOVEMBER 6, 2013 |
| CRITTENDEN COUNTY | APPELLANT | APPEAL FROM THE CRITTENDEN COUNTY CIRCUIT COURT [NO. CV-05-540] |
| V. | | |
| | | HONORABLE VICTOR L. HILL, JUDGE |
| BARRY DAVIS | APPELLEE | REVERSED |

## KENNETH S. HIXSON, Judge

This is a contract interpretation case. The contract was not ambiguous. The trial court considered post-contract course of conduct between the parties to determine the meaning of the unambiguous contract and awarded Barry Davis a judgment for breach of contract in the amount of $5,055.20 plus pre- and postjudgment interest and attorney's fees. Crittenden County appeals, and we reverse.

Richard Busby was the sheriff of Crittenden County and appellee, Barry Davis, was a deputy. In July 2002, Davis was assigned to drug-interdiction duties. Davis became involved in a scheme with other law enforcement officers where they would "skim" money off the top from drug money seized from arrests. Davis was indicted by a federal grand jury in case number CR127. Davis was suspended from employment with the Crittenden County

SLIP OPINION

Sheriff's Department and on July 30, 2002, Sheriff Busby sent Davis a letter that is at the heart of this appeal. The key provisions state:

> This indictment and the investigation that preceded it has created a lot of negative publicity for you and the Crittenden County Sheriff's Office Drug Task Force, that in my judgment for the good of the Sheriff's Department and for the effectiveness of the other Crittenden County Officers makes it necessary for you to be relieved of your duties as a Deputy Sheriff for Crittenden County so long as you are under indictment for these charges.
>
> I am therefore proposing that you be suspended without pay pending your trial on this indictment. You will be eligible to continue your insurance coverage (individual or family) with the county during this period conditioned upon your paying your part of the premium when it comes due. You will be allowed to draw any accrued vacation time that becomes due. In the event that you are *acquitted* of these charges you will receive backpay at your regular salary plus you will accrue vacation pay during the period. If you are *convicted* you will be discharged without any backpay or reinstatement of other benefits. (Emphasis added.)

Davis signed the agreement stating that he accepted the suspension without pay on these terms and conditions.

Within a couple of months, on September 24, 2002, the federal prosecutor moved to dismiss the indictment in case number CR127, and that indictment was dismissed on September 26, 2002. On September 25, Davis was allowed to return to work as a deputy. Davis received regular pay. He was not paid the backpay for the period of suspension during the pendency of CR127. After returning to work for three weeks, on October 16, 2002, Davis was indicted again and was charged with confiscating money from suspected interstate drug traffic and not reporting all of the money confiscated on three different occasions, as well as possession of a stolen firearm. This case was assigned case number CR181.

SLIP OPINION

On October 31, 2002, Sheriff Busby prepared another letter agreement whereby Davis would be suspended without pay while under indictment and, in the event he was acquitted of the charges, he would receive backpay for the period of his suspension. However, if he was convicted, he would be discharged without backpay. This agreement was virtually identical to the July 30, 2002 agreement for the previous indictment. Davis accepted these conditions and was again suspended.

Four days later, on November 4, 2002, Davis was indicted again by the federal grand jury and charged, along with his wife and his father, with conspiring with each other to mislead investigators and the grand jury investigating whether Davis was spending sums in excess of his means as evidence of him taking money from suspected interstate drug traffickers. This case was assigned case number CR187.

A superseding indictment was issued in case number CR181 on July 2, 2003, charging Davis with three counts of illegal possession of a firearm and making false statements regarding the firearms. There were two on-going indictments pending. On July 25, 2003, Davis pleaded guilty to Count IV in case number CR187 in consideration of the government agreeing to dismiss the remaining counts in case number CR187, dismissing the charges in case number CR181, and not seeking forfeiture of his residence.

Upon this plea being entered, Davis was found guilty of mail fraud, a Class C felony, and on November 17, 2003, he was sentenced to serve six months in community confinement and three-years' probation. Following his conviction, Davis was terminated as a deputy sheriff without payment of any backpay.

Almost two years later on September 9, 2005, Davis filed a civil lawsuit against Crittenden County. The complaint set forth the background leading up to the July 30, 2002 letter agreement, and alleged that Davis should have been paid backpay and other sums pursuant to that agreement. Davis sought the sum of $5,055.20, together with pre- and postjudgment interest and reasonable attorney's fees. The County answered, denying liability on the basis that it was not required to pay Davis any backpay under the parties' agreement.

Seven years later on March 5, 2012, the case proceeded to a bench trial before the circuit court. Barry Davis testified that he was indicted in July 2002 and that he and Sheriff Busby ultimately entered into the July 30, 2002 agreement. Davis testified that the agreement set forth what would happen if he were convicted or acquitted. Davis did not testify to what would happen if the indictment was dismissed. According to Davis, after the indictment was dismissed on September 24, 2002, he went back to work the next day. After dismissal of the first indictment, Davis worked for approximately three weeks before he was indicted again. Davis received his regular pay during this three-week period. Davis claimed that he was entitled to backpay for his period of the first suspension from July 30 through September 24, 2002. Davis said that he was not seeking any relief for the second suspension.

Sheriff Busby testified that he entered into the July 30, 2002 letter agreement with Davis. After the first indictment was dismissed, Davis returned to work on September 25, 2002, and Busby testified that "[i]f Mr. Davis had been convicted of something I would not have put him back to work." The sheriff said that when Davis was indicted, his position was that Davis could not work while under indictment and he suspended Davis. Busby said that

4

his intention was that if Davis was exonerated from all the charges, he would put Davis back to work and pay backpay. He said that Davis returned to work for a brief time before being indicted and was suspended again. Busby said that he felt that he was very fair with Davis, and he thought that he carried out their bargain. Busby said that he did not think Davis was entitled to any backpay under the July 30, 2002 agreement. There was no testimony regarding the effects of a dismissal of the federal indictment.

The circuit court ruled from the bench and found that there were two separate agreements (the July 30, 2002 agreement and the October 31, 2002 agreement) because no one could have predicted there would be a subsequent indictment. The court found that the parties, by their conduct, treated the dismissal of the first indictment as tantamount to an acquittal when Davis returned to work following dismissal of that indictment. The trial court thus found that, pursuant to the July 30, 2002 agreement, Davis should have been paid backpay for the period of suspension related to the initial indictment in case number CR127. Prior to the judgment being entered, the County filed a motion for reconsideration, which the trial court denied. On May 10, 2012, the trial court entered an order awarding the amount sued for in the complaint, and also awarded Davis attorney's fees, prejudgment interest, and postjudgment interest.

On appeal, the County argues that the circuit court erred in (1) granting Davis backpay because Davis was not acquitted on charges set forth in the original indictment; (2) not construing the two letter agreements together to find that the County and Davis had agreed that Davis would be discharged without backpay if he were convicted of any charges

set forth in the indictments against him; (3) its award of attorney's fees because Davis should

not have prevailed on his claim for backpay, and the court also failed to set forth the basis for

its award of fees; (4) its award of postjudgment interest; and (5) its award of prejudgment

interest.

The County's first two points challenge the circuit court's determination that Davis

was entitled to backpay under the July 30, 2002 letter agreement. In civil bench trials, the

standard of review on appeal is whether the circuit court's findings were clearly erroneous

or clearly against a preponderance of the evidence. *Rooke v. Spickelmier*, 2009 Ark. App. 155,

314 S.W.3d 718. A finding is clearly erroneous when, although there is evidence to support

it, the reviewing court, on the entire evidence, is left with a firm conviction that a mistake

has been committed. *Id.*

This appeal also involves our review of the circuit court's construction of the terms

of the letter agreement. Accordingly, our standard of review for contract interpretation is

implicated as well. As explained by our supreme court in *Wal-Mart Stores, Inc. v. Coughlin*,

369 Ark. 365, 371, 255 S.W.3d 424, 429 (2007):

Our standard of review for contract interpretation has been stated often:

The first rule of interpretation of a contract is to give to the language employed the meaning that the parties intended. In construing any contract, we must consider the sense and meaning of the words used by the parties as they are taken and understood in their plain and ordinary meaning. The best construction is that which is made by viewing the subject of the contract, as the mass of mankind would view it, as it may be safely assumed that such was the aspect in which the parties themselves viewed it. It is also a well-settled rule in construing a contract that the intention of the parties is to be gathered, not from particular words and phrases, but from the whole context of the agreement.

When a contract is free of ambiguity, its construction and legal effect are questions of law for the court to determine. *Tri-Eagle Enters. v. Regions Bank*, 2010 Ark. App. 64, 373 S.W.3d 399. When contracting parties express their intentions in a written instrument in clear and unambiguous language, it is the court's duty to construe the writing in accordance with the plain meaning of the language employed. *Id*. Language is ambiguous if there is doubt or uncertainty as to its meaning and it is fairly susceptible to more than one equally reasonable interpretation. *Roberts Contracting Co. v. Valentine-Wooten Rd. Pub. Facility Bd.*, 2009 Ark. App. 437, 320 S.W.3d 1. The determination of whether an ambiguity exists is ordinarily a question of law for courts to resolve. *Id*.

One of the arguments raised by the County is that the trial court should have construed the July 30, 2002 and October 31, 2002 agreements together, so as to find that Davis was not entitled to backpay for his initial suspension because backpay was not required if he were convicted of any of the charges in any of the indictments. The County notes that Davis pleaded guilty to one of the felony charges in case number CR187. However, we conclude that the July 30, 2002 agreement was a separate instrument and the language employed was tailored specifically to what would happen in the event of an acquittal or conviction for "these charges," meaning only the charges in case number CR127 and not the subsequent charges resulting in Davis's guilty plea. Therefore, we conclude that the July 30, 2002 agreement stands alone and that Davis's conviction on other charges not identified in that agreement was not a valid basis to deny him backpay. In deciding whether Davis's backpay should have been awarded, we must look to the provisions in the July 30, 2002

contract and determine whether the dismissal of the charges in CR127 entitled Davis to backpay under that agreement.

We agree with the County's argument that, under the plain language employed in the July 30, 2002 letter agreement between the sheriff of Crittenden County and Barry Davis, the trial court erred in finding that the dismissal of the charges equated to an acquittal thereby binding the County to pay Davis's backpay. In case number CR127 the indictment was dismissed pursuant to Rule 48(a) of the Federal Rules of Criminal Procedure, which was a dismissal without prejudice to bring a subsequent prosecution. *See U.S. v. Mendenhall*, 597 F.2d 639 (8th Cir. 1979). In contrast, an acquittal, the term used in the July 30 agreement, means being found not guilty and bars further jeopardy. *See Reaves v. City of Little Rock*, 25 Ark. App. 14, 751 S.W.2d 18 (1988). These are distinct dispositions, and the parties' agreement made no provision for paying backpay to Davis in the event of a dismissal.

The trial court used the course of conduct between the parties to interpret the contract. This course of conduct used by the court was the evidence that Davis was allowed to return to work following the dismissal of the indictment. "Course of Conduct," resorted to by the trial court in the present case, is a contract interpretation device that the factfinder may use in interpreting an ambiguous contract. *See* AMI Civ. 2415 (2013). However, prior to using contract interpretation devices, the contract must be ambiguous. In *Foundation Telecommunications, Inc. v. Moe Studio, Inc.*, 341 Ark. 231, 16 S.W.3d 531 (2000), our supreme court held that an uncertain agreement may be supplemented by subsequent acts, agreements, or declarations of the parties so as to make it certain and valid, and that the acts of practical

8

construction placed upon a contract by the parties may be resorted to in order to relieve it from doubt and uncertainty. Moreover, parol evidence is admissible to explain an ambiguity, either latent or patent. *C. & A. Constr. Co. v. Benning Constr. Co.*, 256 Ark. 621, 509 S.W.2d 302 (1974).

However, in the case at bar the agreement is neither ambiguous nor uncertain, and therefore it was improper for the trial court to resort to rules of contract interpretation. When, as here, the parties have expressed their intentions in clear and unambiguous language, it is the court's duty to construe the writing in accordance with the plain meaning of the language employed. *See Tri-Eagle*, *supra*. The contract plainly provided that Davis would be discharged without backpay if convicted, but that he would receive backpay if acquitted. The contract entered into by the parties did not cover the contingency that actually occurred, and the County did not contract to give Davis backpay if his indictment was dismissed.

A court cannot make a contract for the parties but can only construe and enforce the contract that they have made. *Found. Telecomm.*, *supra*. Moreover, we will not read into the contract words that are not there. *See Seidenstricker Farms v. Doss*, 372 Ark. 72, 270 S.W.3d 842 (2008). And we will not rewrite a contract or approve additional terms that would in effect enforce a contract that the parties might have made, but did not make. *Rector-Phillips-Morse, Inc. v. Vroman*, 253 Ark. 750, 489 S.W.2d 1 (1973).

Finally, even assuming arguendo that the agreement was ambiguous, parol evidence cannot be introduced to change or alter a contract in writing. The test of admissibility is

whether the evidence offered tends to alter, vary, or contradict the written contract or only to prove an independent collateral fact about which the contract was silent. We can all agree that the contract was silent on whether Davis was entitled to backpay in the event of a dismissal. However, the "dismissal" of the indictment as entitlement for backpay is not an independent collateral fact.

Our supreme court's decision in *Rainey v. Travis*, 312 Ark. 460, 850 S.W.2d 839 (1993), is instructive on what constitutes independent collateral facts or agreements. In *Rainey*, the parties were arguing over the right to possess the marital home post–divorce. An antenuptial agreement gave the wife the unconditional right to live in the house after the husband's death. The husband argued that the wife could live in the marital home only if she were alone and not to use the home for any immoral purpose. The supreme court determined that the husband was attempting to add a morals term to the antenuptial agreement and that this additional requirement was neither independent nor collateral. The court held "[b]ecause the extrinsic evidence proposed by [the husband] does not concern independent collateral agreements, it must be offered to alter the antenuptial agreement. As such, the evidence is excluded by the parol evidence rule." 312 Ark. at 464, 850 S.W.2d at 841. Similarly, here, the course of conduct between the parties does not concern an independent collateral fact or agreement. The agreement covered the subject, *i.e.*, when, and if, Davis was entitled to backpay. The course of conduct should not have been introduced to alter the terms of the written agreement.

In this case, we hold that the trial court clearly erred in construing the contract to include a promise by the County to pay Davis's backpay in the event of a dismissal. The contract was unambiguous, and the trial court effectively rewrote the contract to add a term that was not agreed to by the parties. Therefore, we reverse the trial court's award of backpay to Davis.

The County's remaining arguments challenge the trial court's awards for attorney's fees, prejudgment interest, and postjudgment interest. Because Davis is no longer the prevailing party and is not entitled to any damages, we also reverse each of these awards.

Reversed.

WALMSLEY, HARRISON, and WHITEAKER, JJ., agree.

GRUBER and BROWN, JJ., dissent.

**WAYMOND M. BROWN, Judge, dissenting.** I respectfully disagree with the majority decision.[1] In reversing the circuit court, we are permitting a result that was clearly not intended by either of the parties when they entered into their agreement suspending Davis.

This controversy centers around the definition of "acquitted" as that term is employed in the parties' agreement. That provision reads as follows:

> In the event that you are acquitted of these charges you will receive back pay at your regular salary plus you will accrue vacation pay during the period. If you are convicted you will be discharged without any back pay or reinstatement of other benefits.

---

[1] I agree with the majority that the July 2002 agreement stands alone and is the only one we need be concerned with.

The majority has taken the position that the term "acquitted" is not ambiguous and, therefore, the circuit court was not entitled to consider parol testimony to show the intent of the parties. On this point, I disagree.

Admittedly, the term "acquitted" normally means being found not guilty.[2] However, there are at least three possible results that could occur to a defendant facing criminal charges. He could go to trial and be convicted, he could be acquitted, or the charges could be dismissed before trial. In the present case, the agreement is silent as to what happens in the event that a third result—a dismissal of the indictment—occurs. As it turned out, that third result is the outcome that occurred. This third possibility also concerns, contrary to the majority's assertion, when and if Davis was entitled to back pay. Parol evidence may be admitted to prove an independent, collateral fact about which the written contract was silent.[3] Moreover, the County admits that the agreement is silent as to whether Davis would be reinstated in the event that the indictment was dismissed. Because the parties' agreement is silent as to such an important term, I see no good reason why the circuit court could not consider the parties' subsequent actions as the best evidence of their intention concerning the meaning of the agreement.[4] Accordingly, I would affirm the circuit court.

I am authorized to state that Judge Gruber joins this opinion.

*Fogleman, Rogers & Coe*, by: *Joe M. Rogers*, for appellant.
*Tom Donaldson*; and *Robert S. Tschiemer*, for appellee.

---

[2]*Reavis v. City of Little Rock*, 25 Ark. App. 14, 751 S.W.2d 18 (1988).

[3]Ultracuts Ltd. v. Wal–Mart Stores, Inc., 343 Ark. 224, 232, 33 S.W.3d 128, 134 (2000).

[4]*See Foundation Telecom., Inc. v. Moe Studio, Inc.*, 341 Ark. 231, 16 S.W.3d 531 (2000).