**Affirmed and Opinion Filed April 17, 2024**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

_____

**No. 05-22-01048-CV**
_____

**IN THE INTEREST OF P.A., A CHILD**

**On Appeal from the 301st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DF-19-12306-T**

## MEMORANDUM OPINION

Before Justices Carlyle, Goldstein, and Breedlove
Opinion by Justice Breedlove

This is an appeal of a divorce decree. In six issues, Husband challenges the

trial court's interpretation and enforcement of an Arkansas premarital agreement.

We conclude that the agreement was enforceable and that the trial court divided the

parties' property in accordance with its terms. Accordingly, we affirm the trial

court's judgment.

## BACKGROUND[1]

The parties signed an "Agreement in Contemplation of Marriage" on June 4, 1991 (Agreement), "pursuant to the Arkansas Premarital Agreement Act . . . concerning their property now existing or to be acquired." On June 8, 1991, the parties were married, and on June 19, 2019, Wife filed a petition for divorce in Texas. Among other relief, Wife pleaded for enforcement of the Agreement and division of the marital estate "in accordance with its terms." Husband filed a counter-petition and later challenged the Agreement's validity under Arkansas law.

In a series of pretrial orders, the trial court ruled that the Agreement was enforceable and construed certain of the Agreement's provisions. The court made rulings interpreting § 3 (entitled "Property Rights"), § 4 ("Declaration and Preservation of Separate Property"), and § 6 ("Inapplicability of Marital Property Rules"). Notably, the trial court ruled that § 6(a) of the Agreement created a presumption that "all property possessed by a spouse during or on dissolution of marriage is presumed to be that spouse's separate property," and "[t]he spouse who claims that property possessed by the other spouse is marital property has the burden

---

[1] Salient portions of the record are under a sealing order that we must respect. *See Kartsotis v. Bloch*, 503 S.W.3d 506, 510 (Tex. App.—Dallas 2016, pet. denied). However, we must also hand down a public opinion explaining our decisions based on the record. *See* TEX. R. APP. P. 47.1, 47.3 (court of appeals must hand down written opinion; all opinions are open to the public and must be made available to public reporting services); TEX. GOV'T CODE ANN. § 552.022(a)(12) (final opinions and orders issued in the adjudication of cases are public information). Accordingly, where possible, we avoid referring to the materials the parties intended to be confidential and make some references deliberately vague. *See Kartsotis*, 503 S.W.3d at 510; *MasterGuard L.P. v. Eco Technologies Int'l, LLC*, 441 S.W.3d 367, 371 (Tex. App.—Dallas 2013, no pet.).

–2–

of proof at trial to prove by clear and convincing evidence that such property is marital property." Applying that construction, the court ruled that a Dallas residence (Residence) and numerous other assets were Wife's separate property. The trial court also ruled that certain sections of the Texas Family Code "do not apply in this case."

Given the trial court's pretrial rulings, trial was brief and limited to admission of exhibits, offers of proof, and the parties' requests for divorce. The trial court signed a final decree of divorce on July 8, 2022, and made findings of fact and conclusions of law on August 31, 2022. This appeal followed.

### ISSUES AND STANDARDS OF REVIEW

Husband contends the trial court erred by (1) applying a "reversed burden of proof contrary to the community property presumption," (2) concluding the Agreement was enforceable under Arkansas law, (3) ruling that the Residence was Wife's separate property, (4) denying Husband's cross-motion for summary judgment based on a community credit presumption, (5) rejecting Husband's equally-reasonable interpretation of the Agreement, and (6) committing harmful error that precluded proper division of the marital estate.

Husband's challenges are to rulings made in a series of summary judgments, prior to a brief bench trial after which the trial court made findings of fact and conclusions of law based on its summary judgment rulings. We review summary judgments de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). Summary judgment is appropriate when no genuine issue of material fact

–3–

exists and the movant is entitled to judgment as a matter of law on the issues presented. TEX. R. CIV. P. 166a(c). In reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *Valence Operating Co.*, 164 S.W.3d at 661.

A no-evidence motion for summary judgment places the burden on the non-movant to present summary judgment evidence raising a genuine fact issue. *See* TEX. R. CIV. P. 166a(i); *Bradford Partners II, L.P. v. Fahning*, 231 S.W.3d 513, 516–17 (Tex. App.—Dallas 2007, no pet.). We review a no-evidence motion for summary judgment under the same legal sufficiency standard used to review a directed verdict, to determine whether the non-movant produced more than a scintilla of probative evidence to raise a fact issue on the material questions presented. *Bradford Partners II, L.P.*, 231 S.W.3d at 516–17.

We review a trial court's findings of fact made after a bench trial for sufficiency of the evidence and its legal conclusions de novo. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996) (findings of fact); *Fulgham v. Fischer*, 349 S.W.3d 153, 157–58 (Tex. App.—Dallas 2011, no pet.) (conclusions of law).

**DISCUSSION**

1. **Issue 2: Enforceability of premarital agreement**

We first address the enforceability of the Agreement, a question that affects all of Husband's issues. Husband argues that the Agreement is not enforceable

because it lacks the notary seal required by Arkansas law. He relies on § 9-11-402(a) of the Arkansas Code as it read in 1991 when the Agreement was signed. Section 9-11-402(a) in 1991 provided only that "[a] premarital agreement must be in writing and signed and acknowledged by both parties. It is enforceable without consideration." "Acknowledged" was not defined.

Husband further relies on Arkansas Code § 21-14-107, requiring a seal on notarized documents. That section provides,

(b)(1) Under or near a notary public's official signature on every notary certificate, the notary public shall provide a seal of his or her office in blue or black ink, which shall be either a rubber stamp seal or a seal embosser. The seal shall be clear and legible and capable of photographic reproduction.

(2) The seal shall include:

(A) The notary public's name exactly as he or she writes his or her official signature;

(B) The name of the county where the notary public's bond is filed;

(C) The words "notary public" and "Arkansas";

(D) The date upon which the notary public's commission expires; and

(E) The notary public's commission number issued by the Secretary of State if the notary public has been issued a commission number.

ARK. CODE ANN. § 21-14-107. The Agreement contains a notary's acknowledgements that each party personally appeared before her in the absence of the other and "stated that [he or she] had read the foregoing instrument and fully

understood the same and had executed it for the purposes therein contained." The acknowledgements, however, do not bear a seal.

Husband cites *Lyle Farms Partnership v. Lyle*, 507 S.W.3d 519, 522 (Ark. Ct. App. 2016), in support of his argument that the absence of a seal renders the Agreement unenforceable. In that case, the court held that a prenuptial agreement was unenforceable because it contained only a jurat certifying that a notary saw the parties sign the document, not "a formal declaration or admission before an authorized public officer" by the person who has executed an instrument "that such instrument is his act and deed." *Id.* at 522.

We first note that the deficiency Husband relies on here—the lack of a seal— is different from the deficiency in *Lyle Farms*, where the parties failed to "declare they are aware of the importance of the document" and "realize their execution of the document reflects their own act and deed." *Lyle Farms*, 507 S.W.3d at 521 (internal quotation omitted). The agreement in *Lyle Farms* contained only a jurat in which the notary certified that he saw the parties sign the document. *Id*. at 521, 522. Here, the parties' acknowledgements include a statement that each "had read the foregoing instrument and fully understood the same and had executed it for the purposes therein contained."

In response to *Lyle Farms*, the Arkansas legislature amended § 9-11-402. In "Legislative Findings" accompanying the amendment, the General Assembly cited *Lyle Farms* and found that "[a]s parties are able to acknowledge their intent to be

–6–

bound in numerous ways, the term 'acknowledge' should be defined in order to clarify the requirements of Arkansas Code § 9-11-402." 2017 Ark. Laws Act 654, § 1 (Approved Mar. 27, 2017). The legislature then added subsection (b), defining "acknowledged":

> (b) As used in this section, "acknowledged" means:
>
> > (1) A formal declaration or admission before an authorized public officer by the parties who execute the premarital agreement providing that the premarital agreement is the act and deed of the parties;
> >
> > (2) A sworn affirmation by the respective attorneys of each party that the party represented by the attorney understands and consents to the legal effect of the premarital agreement;
> >
> > (3) An agreement signed by the parties that is witnessed by a notary and includes a statement that the parties:
> >
> > > (A) Have consulted with their respective attorneys regarding the premarital agreement;
> > >
> > > (B) Have read and understand the premarital agreement; and
> > >
> > > (C) Freely entered into the premarital agreement without coercion or undue influence; or
> >
> > (4) An execution of the premarital agreement by both parties that is witnessed by two (2) individuals who are disinterested parties to the premarital agreement.

ARK. CODE ANN. § 9-11-402.

In the Agreement, both parties stated that they had read the Agreement "and fully understood the same and had executed it for the purposes therein contained."

Husband's attorney also signed an "Affidavit of Legal Counsel," sworn before a

Notary Public, attesting:

> I, [attorney], have consulted with [Husband], and advised him of his legal rights and of the legal effect of this Agreement between him and [Wife], dated this 4th day of June, 1991; specifically, I have gone over the contractual Agreement with him, clause by clause, explaining it to him and answering any questions that he may have concerning it prior to his execution thereof; furthermore, I have explained to him what his legal rights and obligations would be absent this contractual Agreement and under this contractual Agreement.

Wife's attorney signed and swore to the same provisions in his own affidavit.

We conclude that the parties' acknowledgements, together with their attorneys' affidavits, meet § 9-11-402's current requirements. The question then becomes whether we can apply the 2017 amendment to an agreement signed in 1991.

The Supreme Court of Arkansas has explained when a statute may be given retroactive effect:

> Our rule on this point could not be more clear. Retroactivity is a matter of legislative intent. Unless it expressly states otherwise, we presume the legislature intends for its laws to apply only prospectively.
>
> . . .
>
> However, this rule does not ordinarily apply to procedural or remedial legislation. The strict rule of construction does not apply to remedial statutes which do not disturb vested rights, or create new obligations, but only supply a new or more appropriate remedy to enforce an existing right or obligation. Procedural legislation is more often given retroactive application. The cardinal principle for construing remedial legislation is for the courts to give appropriate regard to the spirit which promoted its enactment, the mischief sought to be abolished, and the remedy proposed.

*Bean v. Off. of Child Support Enf't,* 340 Ark. 286, 296–97, 9 S.W.3d 520, 526 (2000) (internal quotations and citations omitted). And in *McMickle v. Griffin*, 369 Ark. 318, 254 S.W.3d 729 (Ark. 2007), the court explained,

> Although the distinction between remedial procedures and impairment of vested rights is often difficult to draw, *it has become firmly established that there is no vested right in any particular mode of procedure or remedy.* Statutes which do not create, enlarge, diminish, or destroy contractual or vested rights, but relate only to remedies or modes of procedure, are not within the general rule against retrospective operation. In other words, statutes effecting changes in civil procedure or remedy may have valid retrospective application, and remedial legislation may, without violating constitutional guarantees, be construed . . . to apply to suits on causes of action which arose prior to the effective date of the statute . . . . A statute which merely provides a new remedy, enlarges an existing remedy, or substitutes a remedy is not unconstitutionally retrospective . . . .

*Id.* at 338–39, 254 S.W.3d at 746–47 (internal quotations and citations omitted) (holding that amendment providing only a new measure of damages for an existing statutory right "was meant to be applied retroactively").

The "Legislative findings" accompanying the 2017 amendment to § 9-11-402 specifically cite *Lyle Farms* and state that the amendment is "to clarify the requirements of Arkansas Code § 9-11-402." The substance of the requirement—the parties' acknowledgement of their intent to be bound—remained unchanged. Through the amendment, the Legislature recognized that the requirement could be met "in numerous ways." We conclude that the amendment applies to the Agreement, and further conclude that the parties' acknowledgements satisfy § 9-11-402's requirements. We overrule Husband's second issue.

**2.    Issues 1 and 5: Application of the Agreement to the parties' disputes**

Having concluded that the Agreement is enforceable, we turn to Husband's first and fifth issues addressing the trial court's application of the Agreement to the issues in dispute. In these issues, Husband argues that the trial court improperly relieved Wife of her burden to establish her ownership of separate property and erroneously imposed a heightened burden on him to establish his community interest in that property.

**A.    Applicable law**

Because Arkansas and Texas's marital property laws differ in certain respects, we must first determine which state's law to apply in resolving Husband's issues. Both Arkansas and Texas have adopted the Uniform Premarital Agreement Act (UPAA), and the parties expressly incorporated Arkansas's version into the Agreement. *See* ARK. CODE ANN. §§ 9-11-401 to 9-11-413 (Arkansas Premarital Agreement Act [APAA]); TEX. FAM. CODE ANN. §§ 4.001–4.010 (Uniform Premarital Agreement Act [TUPAA]). Under either state's version of the UPAA, the parties may designate which state's law to apply in the event of divorce. *See* APAA § 9-11-403(a)(7) (parties may agree to choice of law governing construction of premarital agreement); TUPAA § 4.003(a)(7) (same).

Section 16 of the Agreement provides, in part, that the Agreement's "interpretation and essential validity shall be governed by the laws of the State of

Arkansas, without regard to choice of law principles." Accordingly, we look to Arkansas law to interpret the Agreement. *See* APAA § 9-11-403(a)(7).

The parties did not agree, however, that Arkansas law would govern division or distribution of their assets on divorce. On that matter, the Agreement is silent.

Texas law applies "to persons married elsewhere who are domiciled in this state." TEX. FAM. CODE ANN. § 1.103. In the Agreement, the parties anticipated that they might later be Texas residents. Agreement § 16 provides that "in the event both parties are residents of the State of Texas at the time of dissolution of their marriage by death or divorce, the venue for enforcement of this Agreement shall be in Dallas County, Texas."

Wife filed this divorce proceeding in Texas, pleading that she "has been a domiciliary of Texas for the preceding six-month period and a resident of [Dallas] county for the preceding ninety-day period." *See* TEX. FAM. CODE ANN. § 6.301 (residency requirements to maintain suit for divorce). She pleaded that the parties "have entered into a premarital agreement altering their marital property rights in certain property on and during their marriage. Petitioner requests the Court to enforce the agreement and divide the marital estate in accordance with its terms." She also requested a "just and right" division of the parties' marital property if the parties were unable to reach agreement, consistent with Texas law but in contrast to Arkansas's division of marital property "one-half (1/2) to each party unless the court finds such a division to be inequitable." ARK. CODE ANN. §9-12-315(a)(1)(A)

–11–

(property distribution on divorce); TEX. FAM. CODE ANN. § 7.001 ("General Rule of Property Division," requiring division "in a manner that the court deems just and right").

"Generally, courts apply the parties' choice of law provided the law of the chosen state bears some reasonable relationship to the parties and the transaction." *McAfee, Inc. v. Agilysys, Inc.*, 316 S.W.3d 820, 824 (Tex. App.—Dallas 2010, no pet.).[2] "In applying a contractual choice-of-law provision, Texas courts apply the substantive law of the choice-of-law provision but apply Texas law to matters of remedy and procedure." *Id.*[3] Here, where the parties agreed to a choice of law for determining the Agreement's "interpretation and essential validity," we apply the substantive law of Arkansas on that issue. *See id.* To other substantive matters, however, and to "matters of remedy and procedure," we apply Texas law. *Id.*[4]

---

[2] *See also Nursing Home Consultants, Inc. v. Quantum Health Servs., Inc.*, 926 F. Supp. 835, 841 (E.D. Ark. 1996), *aff'd*, 112 F.3d 513 (8th Cir. 1997) ("As in most (if not all) other jurisdictions, Arkansas courts will enforce a contractual choice-of-law clause, provided that the law selected is reasonably related to the contract at issue and does not violate a fundamental public policy of the forum state.")(citing *Arkansas Appliance Distrib. Co. v. Tandy Elec., Inc.,* 292 Ark. 482, 485–86, 730 S.W.2d 899, 900 (1987); *Cooper v. Cherokee Vill. Dev. Co.,* 236 Ark. 37, 43–45, 364 S.W.2d 158, 161–62 (1963); and *Restatement (Second) of Conflict of Laws* § 187(2) (1971)).

[3] The same is true in Arkansas. "Under traditional conflicts-of-law analysis, procedural matters are governed by the law of the forum, which, in this case, was the State of Arkansas." *Norton v. Luttrell*, 99 Ark. App. 109, 112, 257 S.W.3d 580, 582 (2007).

[4] As we discuss below, certain provisions in the Agreement preclude the application of Texas law in certain instances, which is permitted by both the APAA and the TUPAA. *See* APAA § 9-11-403(a)(8); TUPAA § 4.003(8). However, where Texas law is not precluded by the Agreement, we conclude that the trial court erred by its rulings in finding of fact 21 and conclusion of law 6 that Texas Family Code §§ 1.103, 3.003, and 7.002 do not apply to this divorce proceeding. *See* TEX. FAM. CODE ANN. §§ 1.103 (Texas law applies to persons married elsewhere who are domiciled here); 3.003 (presumption of community property and degree of proof necessary to establish that property is separate); 7.002 (division of property acquired while spouse was domiciled in another state).

## B.     Application of Agreement to disputed issues

Husband contends in his first and fifth issues that the trial court erred in its rulings about the parties' burdens of proof under the Agreement. His complaints arise from the trial court's March 14, 2022 summary judgment ruling granting Wife's February 15, 2022 no-evidence motion for partial summary judgment. In her motion, Wife sought summary judgment that fifty specific assets that were in her name—including real property and corporate and partnership interests—were her separate property. She argued, and the trial court ultimately concluded, that the Agreement creates a presumption that assets in her name are her separate property, and therefore, it was Husband's burden to come forward with evidence to support a finding otherwise.

Husband asserts the trial court erroneously imposed a burden on him to raise a fact issue that the fifty specific assets in Wife's name and acquired during the marriage were not Wife's separate property. He contends the trial court's ruling runs afoul of the community property presumption and burdens of proof in Texas Family Code § 3.003. *See* TEX. FAM. CODE ANN. § 3.003(a) ("Property possessed by either spouse during or on dissolution of marriage is presumed to be community property."); § 3.003(b) ("The degree of proof necessary to establish that property is separate property is clear and convincing evidence.").

In particular, Husband challenges the trial court's construction of § 3(b) of the Agreement. Under the heading "Property Rights," § 3(b) states in pertinent part:

> It is also [the parties'] general intent, desire, and agreement that, subject to the terms of this Agreement, their respective property rights, as they exist on the date of the marriage, and as they may subsequently exist, will continue free from any claim that might be made by the other because of their marriage, with the same effect as if the marriage had never occurred.

Agreement § 3(b).

Husband argues that § 3(b) "only address[es] separate property, and does not prohibit the creation of community or marital property during the marriage." He contends that the trial court's interpretation of § 3(b) is flawed and unreasonable because "it would render the vast majority of the [A]greement surplusage and meaningless." Wife responds that § 3(b) has no restriction on the type of property or type of claim it covers, and clearly states the parties' intent that their respective property rights will continue "with the same effect as if the marriage had never occurred." She concludes that in § 3(b), the parties "waiv[ed] and releas[ed] each spouse's claims to property of the other based upon the spouses' marital relationship."

In considering Husband's complaints, we turn to the Agreement to determine whether the parties agreed to treat property acquired during the marriage as separate property. As we have discussed, we look to Arkansas law in doing so. Husband argues that the Agreement only governs assets acquired through gift, devise, or descent, and does not expressly state that income and compensation earned during the marriage is "separate property." Therefore, he argues, the Agreement is

inapplicable to the parties' dispute over the fifty assets, and Texas's community property presumption applies.

Husband's argument, however, fails to consider "the whole context of the agreement," as required when construing a contract under Arkansas law. *See Wal-Mart Stores, Inc. v. Coughlin*, 369 Ark. 365, 371, 255 S.W.3d 424, 429 (2007) ("It is also a well-settled rule in construing a contract that the intention of the parties is to be gathered, not from particular words and phrases, but from the whole context of the agreement." [internal quotation omitted]). In contrast to the parties' agreement in § 3(b) that "their respective property rights . . . will continue free from any claim that might be made by the other because of their marriage," § 3.003(a) of the Texas Family Code provides that property possessed in the name of either spouse during or on dissolution of marriage is presumed to be community property. TEX. FAM. CODE ANN. § 3.003(a). That presumption cannot apply while at the same time giving effect to § 3(b) of the Agreement, which prohibits the creation of rights in property based on the marriage. Therefore, § 3(b) of the Agreement forecloses Husband's attempt to create a presumption of ownership rights in property allegedly acquired during the marriage with Wife's income and compensation in reliance on Texas Family Code § 3.003. *See Crittenden Cty. v. Davis*, 430 S.W.3d 172, 178 (Ark. App. 2013) (courts "will not rewrite a contract or approve additional terms that would in effect enforce a contract that the parties might have made, but did not make").

We now turn to Husband's assertion that even if he bore the burden to come forward with evidence of a property right in the disputed assets, he satisfied his burden.[5] Husband filed an "Original Counter-Petition for Divorce" seeking division of the parties' community estate "in a manner that the Court deems just and right, as provided by law." He also pleaded for "a disproportionate share of the parties' estate" based on a list of factors that included "gifts to or by a spouse during the marriage" and "increase in value of separate property through community efforts by time, talent, labor, and effort." Husband also "reserve[d] the right to enforce and/or challenge any or all of the [A]greement and to further request relief related thereto, as applicable." As we have explained, Wife responded by filing a no-evidence motion for summary judgment regarding the fifty specific assets, arguing the Agreement created a presumption that the assets were her separate property because they were in her name alone.

In response to Wife's motion, Husband offered evidence that the assets at issue were acquired with Wife's income or were partnership or membership interests she acquired for "consideration in the form of mutual promises" without "cash or other exchange of funds." He also offered evidence that Wife obtained certain real

___

[5] The parties have disputed whether the trial court applied the proper burden of proof in its ruling. We presume here that Husband's burden in responding to Wife's no-evidence motion was to raise "more than a scintilla of probative evidence to raise a genuine issue of material fact," as required by civil procedure rule 166a(i). *JLB Builders, L.L.C. v. Hernandez*, 622 S.W.3d 860, 864 (Tex. 2021); *see also Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 172 (Tex. 2003) (declining to apply clear and convincing standard of proof for summary judgment purposes).

property interests by exchange or gift. We conclude, as the trial court did, that this evidence is insufficient to raise a fact issue to defeat Wife's dispositive motion. The parties agreed that "their respective property rights, as they exist on the date of the marriage, and as they may subsequently exist," would "continue free from any claim that might be made by the other because of their marriage." Husband did not offer any evidence that the property rights he claims in the assets were acquired in any manner other than as a result of the marriage. Because Husband failed to raise a genuine issue of material fact in response to Wife's motion, the trial court did not err by granting summary judgment. *See* TEX. R. CIV. P. 166a(i). We therefore overrule issues 1 and 5.

### 3. Issues 3 and 4: The Residence

In his third and fourth issues, Husband argues the trial court erred by granting a summary judgment that the Residence was Wife's separate property and denying his cross-motion for summary judgment seeking a declaration that the Residence is "99.994293% community property as a matter of law." In support of his third issue, he contends the award was based on an improper interpretation of the Agreement and an erroneous application of the burden of proof. He argues he provided "some evidence of purchase with an obligation not looking solely to [Wife's] separate property to acquire the [Residence]" because the note did not explicitly state that the lender would look solely to Wife's separate property for repayment.

–17–

In his fourth issue, he contends that his competing cross-motion for summary judgment should have been granted "based on a community credit presumption triggering community property rights under Texas law." *See Hodges v. Hodges*, No. 05-92-00239-CV, 1993 WL 25347, at *7 (Tex. App.—Dallas Feb. 4, 1993, no writ) (not designated for publication) (where property is purchased partly with separate funds and partly on community credit, the property is community property "to the extent and in the proportion" of the community credit) (citing *Broussard v. Tian*, 295 S.W.2d 405, 406 (Tex. 1956), and *Bell v. Bell*, 593 S.W.2d 424, 426 (Tex. Civ. App.—Houston [14th Dist.] 1980, no writ)).

Specific to the Residence, Wife moved for summary judgment on both no-evidence and traditional grounds. She relied on her contention that the Agreement created a presumption of separate property, but she also offered evidence that she acquired the Residence with property that was separate under the Agreement's terms. She provided evidence that she used a $1,000 gift from her father to purchase the property and assumed a note payable to a mortgage company for the balance. The contract of sale recites that the property was conveyed to her as "her sole and separate property." She is listed on the note as the sole borrower. The warranty deed with vendor's lien recites that the property was being transferred to Wife, "a married woman, as her sole and separate property." The deed also stated that the consideration delivered was a cash payment and the grantee's assumption of the note.

In his cross-motion, Husband relied on evidence that Wife's $1,000 gift was less than one percent of the purchase price of the Residence, and that Wife assumed the promissory note to the mortgage company for over ninety-nine percent of the transaction. He argues that nothing in the note reflects an agreement to look solely to Wife's separate estate for satisfaction of the indebtedness. He concludes that because the property was acquired by community credit, it should have been characterized as community property. He cites the supreme court's opinion in *Broussard* in support of his argument. *See Broussard*, 295 S.W.2d at 406.

In *Broussard*, the court held that even though the initial payment and some of the installment payments on a vendor's lien note were made out of a husband's separate funds, the wife would be deemed owner of one-half interest in the property under the community property presumption. *Id.* at 406. As the party claiming separate property, the husband bore the burden of proving the character of the note. *Id.* The court concluded that the husband's testimony was insufficient to meet the burden where the note itself did not reflect that it was to be paid out of the husband's separate property. *See id.* at 406–07. This Court later cited *Broussard* in explaining that where property is purchased partly with separate funds and partly on community credit, the property is community property "to the extent and in the proportion" of the community credit. *Hodges*, 1993 WL 25347, at *7. Neither of these cases, however, involved a premarital agreement.

Here, in contrast, Wife offered evidence that she acquired the Residence by using a $1,000 gift from her father and by agreeing to assume the debt and collateral obligations of a mortgage company. The contract of sale expressly stated that the property was sold to Wife "as her sole and separate property."

Further, nothing in the Agreement required Wife to obtain the lender's agreement to look only to her separate property for payment. Instead, the Agreement provides that property acquired "with the proceeds of a loan (either a direct borrowing or by means of guarantees, asset pledges, or collateral agreements) to either [party] shall be the separate property of the borrower, whose separate property shall be the sole recourse for the lender." (Agreement § 4(c)). The Agreement further provides:

- "the separate character of the properties of each, whether now owned or subsequently acquired, will be preserved after the marriage" (Agreement § 3(b));

- the parties' "respective property rights . . . as they may subsequently exist, will continue free from any claim that might be made by the other because of their marriage" (Agreement § 3(b));

- property acquired during the marriage by gift is separate property (Agreement §§ 3(a), 4(a));

- properties acquired during the marriage by "purchase with or exchange for separate property" is separate property (Agreement § 4(a));

- the parties released and waived "any claim of reimbursement for a share of the enhanced value of any real estate owned by either party as his or her separate property and which enhanced value may have resulted from an expenditure of time, toil, effort, or marital funds" (Agreement § 5(b)); and

–20–

- marital property is presumed to have been expended first for living expenses "not resulting in the acquisition or improvement of any asset" (Agreement § 6(a)).

In sum, Wife offered evidence that under the terms of the Agreement, the Residence was her separate property, and the lender's sole recourse for repayment was her separate property. Husband did not proffer any evidence supporting his contention that Wife's assumption of the pre-existing promissory note and deed of trust lien was "an obligation not looking solely to [Wife's] separate property." Accordingly, Husband did not raise a fact issue precluding summary judgment, and we conclude that the trial court did not err by granting Wife's motion. *See* TEX. R. CIV. P. 166a(c). We overrule Husband's third and fourth issues.

## 5. Issue 6: Harmful error

In his final issue, Husband argues that the trial court's rulings were "an outright denial of any community rights and the improper elimination of over a billion dollars of assets and property rights at issue." He contends that the trial court's mischaracterization of his community property rights and its failure to make a just and right division of the parties' community property led to the rendition of an improper judgment. *See* TEX. R. APP. P. 44.1(a)(1) (no judgment may be reversed on appeal on the ground that the trial court made an error of law unless court of appeals concludes that the error probably caused the rendition of an improper judgment). He contends that the trial court's erroneous interpretation of the Agreement requires reversal. *See In re Marriage of McNelly*, No. 14-13-00281-CV, 2014 WL 2039855,

at *12 (Tex. App.—Houston [14th Dist.] May 15, 2014, pet. denied) (mem. op.) (trial court's erroneous interpretation of premarital agreement warranted reversal of decree dividing marital estate).

Although we have concluded that the trial court erred by ruling that Texas law did not apply to the parties' divorce and property division, we have also concluded that the Agreement is enforceable and that the trial court's rulings regarding the fifty assets and the Residence should be affirmed. We conclude that the trial court's error did not cause the rendition of an improper judgment. TEX. R. APP. P. 44.1(a). We overrule Husband's sixth issue.

## CONCLUSION

The trial court's judgment is affirmed.

221048f.p05

/Maricela Breedlove/
MARICELA BREEDLOVE
JUSTICE

–22–



## JUDGMENT

IN THE INTEREST OF P.A., A CHILD,

No. 05-22-01048-CV

On Appeal from the 301st Judicial District Court, Dallas County, Texas Trial Court Cause No. DF-19-12306-T.
Opinion delivered by Justice Breedlove. Justices Carlyle and Goldstein participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee Charlotte J. Anderson recover her costs of this appeal from appellant David S. Anderson.

Judgment entered this 17th day of April, 2024.